DANIEL W. WILLIAMS, PLAINTIFF IN ERROR, VS. EDWARD T. C. DICKENSON, DEFENDANT IN ERROR.

CRIMINAL TORT—Statutory construction, evidence.

CHANGE OF VENUE—Payment of costs on continuance.

1. Where a private individual has been damaged in person or property by the tortious act of another, which act amounts to a felony, the civil suit for the redress of the private wrong may proceed *pari passu* with the criminal prosecution ; or the one may precede, or succeed the other ; or, if the criminal prosecution is never commenced at all, the failure to seek public justice is no bar to the private remedy. Neither is an acquittal or conviction upon the criminal charge any bar to the civil remedy.

2. The granting or refusal of an application for a change of venue is a matter placed by the statute within the judicial discretion of the court ; and while the exercise of such discretion is the subject of review by the appellate court, it will not interfere unless there is a palpable abuse, or grossly improvident exercise of the discretion imposed.

3. Under the provisions of section 107, page 886, McClellan's Digest, the court may order the taxation and entry of a judgment for the costs accrued in a cause as a condition for the granting of an application for a temporary postponement of the trial.

4. A person convicted of the statutory offense of house-burning under the provisions of section 4 of Chapter 1637, laws of 1868, is not excluded under section 7, page 991, McClellan's Digest, from being a witness, or from giving evidence either in person or by deposition in any suit or proceeding, unless such burning constituted the crime of arson in the technical sense in which that term was known to and recognized by the common law.

5. The well-recognized canon of construction is that where legal

terms are used in a *statute*, they are to receive their technical meaning unless the contrary plainly appears to have been the intention of the Legislature.

6. When a *prima facie* case is established showing the existence of a conspiracy between two or more to do an unlawful act, the declarations, acts or admissions of any such conspirators touching the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all, and is, therefore, original evidence against each and every one of them.

7. Where a party producing a witness seeks to impeach him under the provisions of section 26, page 518, McClellan's Digest, in case such witness proves adverse, a large discretion is necessarily reposed in the trial judge as to whether the witness who is before him is so adverse to the party producing him as will authorize his impeachment under the statute.

8. An attempt to suborn a witness in a cause to give false testimony therein may be exposed in the trial of the cause whose issues were intended to be thus corruptly affected : and proof is admissible in such cause of such corrupt attempt in order to expose to the jury the immoral disposition in the party making the attempt to bring about a false and unjust result in the cause.

9. In charging juries the courts should be careful not to trench upon the exclusive province of the jury in determining the credibility of particular witnesses, or the degree of credit or weight to be given to particular elements of the evidence. He may instruct them as to the rule, but not as to the weight of the evidence. The weight to be given to the evidence, or to any phase or element thereof, is for the jury alone to determine. Charges that point out to the jury material features of the evidence, and that say such features " are entitled to great weight " are fatally erroneous.

10. Where a civil suit is brought to redress a tortious act that amounts to a crime, the defendant, as in a prosecution for the crime. is entitled to every reasonable doubt. The crime thus made the basis of a civil suit must be made out beyond a reasonable doubt, else the plaintiff is not entitled to a recovery. *Shultz vs. Pacific Insurance Co.*, 14 *Fla.*, 73, *cited and approved.*

Writ of Error to the Circuit Court for Jackson county.

The facts of the case are stated in the opinion.

*John W. Malone* for Plaintiff in Error.

*Liddon & Carter* for Defendant in Error.

TAYLOR, J. :

Edward T. C. Dickenson, the defendant in error, instituted his action of trespass in the Circuit Court of Jackson county; in the First Judicial Circuit, on the 23rd day of December, 1886, against Daniel W. Williams, the plaintiff in error. The declaration alleging that Dickenson was the owner and in possession of a certain frame building in Jackson county, to-wit: a gin house, together with the fixtures usually belonging to a building in which cotton is ginned by steam power, consisting of a water tank, one cotton-press, one steam engine, boiler and machinery, two cotton gins with feeders and condensers, two gin feeders and condensers, lots of cotton in the seed and lint, lots of cotton seed, bagging and ties, tools, belting, shafting and pul-

leys, etc. That the defendant Williams, on or about the 16th day of December, 1886, wilfully and maliciously contriving and intending to injure the plaintiff, counseled, hired, caused and obtained one Prior Wheeler to set on fire and burn the said building, fixtures, goods and chattels, and by reason of such counseling, hiring, causing and obtaining, the said Prior Wheeler, on the 16th day of December, 1886, did set on fire and burn the said gin house, fixtures, goods and chattels aforesaid, whereby they were burned up and totally consumed; and by said wrongful acts the plaintiff was greatly damaged by the loss and consuming of said property. And plaintiff was also greatly damaged by said wrongful acts, and by reason thereof, suffered much annoyance and inconvenience and trouble, pain of mind and body. Damages in the sum of $10,000 was claimed. To this declaration the defendant pleaded the general issue, said plea being filed January 25th, 1887. On the 31st day of May, 1887, by leave of the court, the defendant also filed the following plea in abatement: "Now comes the defendant, and for a plea in abatement to plaintiff's action says, that the cause of action set forth in plaintiff's declaration is a tort which amounts to a felony, and the defendant has been indicted therefor in the Circuit Court for Jackson county, and said indictment is still pending and no trial has been had thereof, wherefore defendant prays that said suit be abated." To this plea in abatement the plaintiff interposed a demurrer. This demurrer was sustained upon argument, and exception was taken.

On the 28th day of September, 1887, after leave granted, the plaintiff filed an amendment to his declaration, whereby a second count was added to the original declaration, charging the defendant himself with the burning of said property. To this amended declaration the defendant pleaded also the general issue.

On the 30th day of May, 1887, at the term of the Circuit Court preceding the term at which the cause was tried, the defendant Williams filed his petition for a change of venue of said cause, upon the ground that the plaintiff Dickenson had an undue influence over the minds of the inhabitants of said county, and that he did not believe that he could get a fair and impartial trial in said county ; that said Dickenson is a large merchant, centrally situated in the county, having customers in almost every section of the county, and has great influence over those customers ; that the said Dickenson and his friends, as your petitioner is informed and believes, has been very active in trying to get up evidence in the case against your petitioner; and he, Dickenson, has been for several years a bitter enemy of your petitioner, and has sought, as your petitioner believes, to render your petitioner odious in the minds of the inhabitants of the county ; that one of the counsel of said Dickenson in said suit, as well as the clerk of said court, both of whom are influential, have been for several years, as your petitioner is informed and believes, bitter enemies of your petitioner, in consequence of which facts your petitioner believes that he has been rendered so odious that he cannot

expect a fair and impartial trial in said county. This petition was sworn to by the defendant. On the 31st of May, 1887, this application for change of venue was heard, and the following order made in reference thereto: "Now at this day came the parties by their attorneys, and the parties submitting evidence upon a motion of defendant for a change of venue, and after hearing all the evidence and argument of the counsel. the court being advised of its opinion, overruled and denied the motion for a change of venue." To which exception was taken. On the 15th of November, 1887, at the Fall term of the Circuit Court, upon an application being made by the defendant for a postponement of the cause because of the absence of some one or more of his attorneys, the court made an order postponing the trial until the following day, the 16th of November, 1887, at the same time ordering the costs of this day's proceedings, so far as it relates to this cause, including this day's attendance of witnesees, to be taxed against the defendant; whereupon a formal judgment for said costs amounting to $85.45 was then and there entered against said defendant in favor of the plaintiff. The trial of the cause was concluded on the 19th of November, 1887, and resulted in a verdict and judgment for the plaintiff in the sum of $2,850; the plaintiff before the retirement of the jury entering a nonsuit as to the second count included in the amended declaration. Motion for new trial was overruled and denied by the court, and from this judgment the de-

fendant in the court below took a writ of error to this court.

The first error assigned is the order sustaining the plaintiff's demurrer to the defendant's plea in abatement. This plea seeks to invoke the doctrine held in the English courts, that where a private individual has been damaged in person or property by the tortious act of another, which act amounts to a felony, the matter should be disposed of before the proper criminal tribunal, in order that the justice of the country may be first satisfied in respect to the public offense, before the injured individual can seek civil redress for the private wrong inflicted upon him. The redress of the private wrong being postponed until after the public justice is satisfied. Two reasons for this rule are assigned in England : First, the party injured is relied upon to take the place of public prosecutor ; in some cases he has even been required to employ counsel to prosecute on behalf of the crown, and his interest in the accomplishment of public justice is kept alive by postponing the redress of his private grievance; and, second, in cases of felony, there was a forfeiture to the crown of the felon's property, and the private individual was not allowed to acquire priority over the crown in satisfaction of his demands upon the property of the felon. But in this country this doctrine of the suspension of the civil remedy in cases of felony has been repudiated by the great weight of the American authorities. Under the system of laws preprevailing in the United States the reasons for this

rule are entirely absent. Here we have a public officer whose duty it is to prosecute all offenders against the State without reliance upon the injured individual; and here we have no forfeiture of the felon's goods. The civil and the criminal prosecution may, therefore, go on *pari passu*; or the one may precede, or succeed the other; or, if the criminal prosecution is never commenced at all, the failure to seek public justice is no bar to the private remedy. Neither is an acquittal or conviction upon the criminal charge any bar to the civil action. Cooley on Torts, 86 *et seq.*; Pettingill vs. Rideout, 6 N. H., 454; Blassingame vs. Glaves, 6 B. Mon., 38; B. & W. R. R. Co. vs. Dana, 1 Gray, 83; Howk vs. Minnick, 19 Ohio St., 462; Newell vs. Cowan, 30 Miss., 492. The court below properly sustained the demurrer to the defendant's plea in abatement.

The second error assigned is the refusal of the court to grant the defendant's application for a change of venue. In the case of Greeno vs. Wilson, decided at the last term of this court, 27 Fla., 492; 8 South. Rep., 723, it is held that the granting or refusal of an application for a change of venue is a matter placed by the statute within the judicial discretion of the court, and that while the exercise of such discretion is the subject of review by the appellate court, it would not interfere unless there was a palpable abuse, or grossly improvident exercise of the discretion imposed. It appears from the order of the judge denying this application that evidence was heard and submitted upon the motion. What that evidence was, the record does not dis-

7

close except the petition and affidavit of the applicant; but we presume it satisfied the judge that there was no necessity for such change.

On the 15th of November, 1887, while the court was holding its regular term, and when this cause stood ready for trial, and, as the order recites, when it was set by appointment of counsel for trial, the defendant's counsel applied for a temporary postponement or adjournment thereof on account of the absence of other attorneys for the defense. The court granted the application for postponement until the following day, but upon the condition that the costs of that day's proceedings, in so far as they related to this case, including that day's attendance of witnesses, should be taxed against the defendant, whereupon final judgment for the costs thus taxed, amounting to $85.45, was entered in favor of the plaintiff against the defendant. Though no exception appears from the record to have been taken to this order, it is assigned as the third error. Under the provisions of sec. 107, p. 836, McClellan's Digest, which provides that " it shall be lawful for a court or judge at the trial of any cause, where they or he may deem it right for the purposes of justice, to order an adjournment for such time, and subject to such terms and conditions as to costs and otherwise as they or he may think fit," we think that the entry of the judgment for costs was fully authorized.

The fourth error assigned is the admission in evidence of the depositions of one Prior Wheeler, taken while he was an inmate of the State's prison serving

out a sentence imposed after conviction for the burning of the said gin-house, machinery, etc., set forth in the declaration herein. The objection urged against the admission of the testimony of this witness is predicated upon section 7, p. 991, McClellan's Digest, which provides that persons convicted of murder, perjury, piracy, forgery, larceny, robbery, ARSON, etc., shall be excluded from being a witness or from giving evidence either in person or by deposition in any suit or proceeding, civil or criminal, etc. We do not think that this objection is tenable. The statute last cited was enacted March 10, 1845, long prior to Chapter 1637, laws of 1868, under section 4 of which last act, the witness, Prior Wheeler, had been indicted, tried and convicted. His offense was a statutory crime, made a felony by the act of 1868, last cited, and would not have constituted the crime of arson as known to the common law; the building burned being neither a dwelling, nor an outhouse or barn within the curtilage. It is a well recognized canon of construction that where legal terms are used in a *statute*, they are to receive their technical meaning, unless the contrary plainly appears to have been the intention of the Legislature. State vs. Mace, 5 Md., 337; State vs. Engle, 21 N. J. (Law), 357; Sutherland on Statutory Construction, secs. 247-253. There is nothing in the act of 1845 that indicates any other intention on the part of the Legislature than that the disqualifying crimes therein denominated as murder, perjury, piracy, forgery, larceny, robbery, ar-

son, etc., should be considered or construed in any other than their technical sense as known and recognized by the common law. Applying to this statute the familiar rule of construction above, it must be held not to exclude any person from being a witness in any cause who has been convicted of house-burning, unless such burning constituted the crime of arson in the technical sense in which that term was known to the common law. There was no error, therefore, in admitting the evidence of Prior Wheeler.

The fifth error assigned is the admission of the evidence of the witnesses Lettie Wheeler, Ida Wheeler, Alfred Nichols, J. P. Bevis, Byrd Garrett and Wylley Long. Lettie Wheeler was the wife of the convict witness Prior Wheeler. She testified in substance that she knew the time the Dickenson gin-house was burned; that the defendant Williams was at her house on the Tuesday before the burning, when he told her that he was going to Ben Baker's who lived in the neighborhood, and asked me if my girl could go to Greenwood and tell Prior he wanted to see him. "I (witness) sent for prior and he came. Mr. Williams told me to tell Prior to stay until he (Williams) came back. He said he had offered Prior a good home and support for a lifetime, but he, a fool, would not take it. Mr. Williams returned in a short while after Prior had come, and he and Prior had a long talk in the corner of the fence, down the road from my house, but I do not know what was said."

Ida Wheeler, a daughter of Lettie and Prior Wheeler, corroborated the above testimony of her mother, Lettie Wheeler, in every particular.

In the depositions of Prior Wheeler, that we have seen were properly admissible, he testifies to the same facts and interviews related in the testimony of Lettie and Ida Wheeler, and testifies directly as to the existence of a conspiracy between himself and the defendant Williams to burn this gin-house ; and testifies that the subject-matter of the conspiracy was discussed at the interview, the occurrence of which, Lettie and Ida Wheeler both verify. The evidence of both Lettie and Ida Wheeler was pertinent and proper, not only because it tended to establish, circumstantially, the formation of a conspiracy between Williams and Prior Wheeler, in that it showed an earnest solicitude on the part of Williams privately to interview Wheeler shortly prior to the burning; and the declaration by him of an offer from him to Wheeler of a good home for a lifetime; and the actual holding of a long and confidential interview by him with Wheeler; but it corroborates the evidence of Prior Wheeler upon material points in the case. There was no error in the admission of this evidence.

Alfred Nichols, the admission of whose evidence is also included in the same assignment of error, testified that during the Spring term of the Circuit Court in 1887, Williams came up to his gate and stated that he was riding around trying to find witnesses to invalidate

William Haskins' oath, he desired witness to invalidate it. I told Mr. Williams that Mr. Key, a neighbor of mine, would be a good witness for him; that Key had told me that he was satisfied Williams did not do the mischief, as he, Key, had seen Williams pass his home between sundown and dark on the night of the burning. Mr. Williams, after studying a minute, said: "No; Mr. Key was mistaken, that he did not see him pass there on the evening the gin was burned, but that he passed there the evening that it was intended to be burned." This, evidence, we think, was highly pertinent, and was properly admitted. It tended to prove an admission by the defendant Williams of a knowledge of the existence of an intention to commit the crime charged in the declaration, and an accurrate knowledge of the time when that crime was intended to be consummated. That admission also corroborates the evidence of Prior Wheeler, wherein he testified to one unsuccessful attempt to burn the property prior to its actual destruction, when, as Wheeler swears, Williams was personally present.

J. P. Bevis, the admission of whose evidence is also included in the last assignment of error, testified that at a Justice's Court held at his house in June, 1886, Williams said that he had worked soon and late at Dickenson's and Dickenson was stealing from him every way he could; and that Dickenson might think he was done with it, but he would have satisfaction if it took him forty years to get it. There was no error in the admission of this testimony. The declarations

testified to as coming from the defendant were anterior to the burning, and exhibited an intense feeling of hostility to the plaintiff Dickenson, the desire to gratify which spirit of revenge furnished a strong motive for the commission of the wrong complained of.

The admission of Byrd Garrett's and Wesley Long's evidence is also included in the last assignment of error. These two witnesses both testify to being at Prior Wheeler's house playing cards on one Sunday when Williams came by and called Wheeler out and had a lengthy private interview with him, the purport of which they did not hear. This testimony we think was pertinent and properly admitted. Like the testimony of Lettie and Ida Wheeler, discussed above, it showed the holding of private interviews between Wheeler and Williams at the solicitation of the latter, prior to the fire, and was a pertinent circumstance tending to show the formation of a conspiracy between them; corroborative also of Prior Wheeler's evidence as to the fact that such an interview at the time and place was held by them.

The sixth error assigned is the admission of the evidence of W. D. Sorey, as to who made tracks like those testified to by him. This witness testified to having been at the ruins of the gin-house next morning after the fire; that he there examined tracks and found one peculiar track that went from the gin-house across the road. The peculiarity about this track was that the heel seemed to drop back. He then testified that the defendant Williams made tracks like that,

and that he knew of no one else who made such tracks. There was no error in admitting this evidence. The second count contained in the amended declaration charged the defendant Williams directly with the burning of this property. These tracks found next morning in close proximity to the scene of the crime and identified by this witness as being his, or very much like the peculiar tracks usually made by him, pointed strongly towards his personal presence at the scene of the outrage; and, under the second count in the declaration, was properly admitted; and, we think, was permissible even under the first count in the declaration charging him with aiding, counseling, hiring and abetting the said Wheeler in the commission of the deed.

The seventh error assigned is an objection to the admission in evidence of the testimony of the witness, W. L. Garrett, as to what Prior Wheeler had told him that Williams had told Wheeler in reference to the burning of plaintiff's gin-house. It was error to admit this testimony. The evidence of Prior Wheeler and of W. L. Garrett both show that these conversations between them were had anterior to the formation of any conspiracy between Wheeler and Williams. Under the rule governing the admission in evidence of the declarations of co-conspirators, which is thus stated in 1 Greenleaf on Evidence, sec. 111 : "The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original con-

certed plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all; and is therefore original evidence against each of them," this evidence should have been excluded. The evidence of W. L. Garrett related to declarations made to him by Prior Wheeler as to what was said by Williams to Wheeler at a time long prior to the formation of the conspiracy, when there was no conspiracy in existence, and, when communicated to Garrett, there was lacking the foundation upon which such evidence is ever admitted, *viz:* The conspiracy. At the time Wheeler told these things to Garrett, Wheeler was not a co-conspirator with Williams, and, therefore, his declarations to a third party, under this rule, could not bind Williams and were inadmissible as against Williams.

The eighth error assigned is because the plaintiff was allowed to ask W. L. Garrett (he being plaintiff's witness) whether he had not stated on the former trial that Prior Wheeler had told him that twice he was going to burn the gin, but that he (the witness) did not believe him. Questions of this kind tending to contradict or impeach a witness are not ordinarily permissible under the rule that a party is not at liberty to impeach his own witness; but under the provisions of our statute, sec. 26, p. 518, McClellan's Digest, in case a witness prove adverse, the party producing him may contradict him by other evidence, or prove that he has made at other times a statement inconsistent with his present testimony; but in such case the ground work

must be laid first by calling to the attention of the witness the particular occasion and the circumstances of the supposed statement, and he must be asked whether or not he made such statement. The question here objected to seems to have been designed for this purpose. Whether the witness proved adverse, or not, does not appear from the record, but in the examination of witnesses under this statute a large discretion has, necessarily, to be reposed in the trial judge who has the witness before him, and is in a position to determine from his manner of testifying whether as a witness he stands indifferent or adverse to the party producing him. Recognizing this discretion in the court below, we cannot, from the record before us, hold this assignment to be error.

The ninth error assigned is the refusal of the court to permit the defendant on the cross-examination of the witness W. L. Garrett to ask him "whether Prior Wheeler owed him anything, and whether he had not told Wheeler that if Wheeler would pay him $25 and burn that gin he (Garrett) would give him $25 of his debt to him." The witness answered that nothing was said about indebtedness to him from Wheeler, but his answer was stricken out by the court, which latter ruling is assigned as the tenth error. This witness was examined in chief as to conversations had between himself and Prior Wheeler in reference to the burning of the gin-house, and in reference to what the

defendant Williams had said to Wheeler regarding same. Upon the cross-examination the defendant was entitled to a full expose of the entire conversations relating to the subject, and the court erred in refusing to allow the questions excepted to as the ninth error; and erred also in striking out the answer made by this witness, and assigned as the tenth error. The question refused to be put tended to criminate the witness, but it was a personal privilege resting with the witness alone whether he would answer it or not. Had he refused to answer, we are of the opinion that he should have been protected by the court, in such refusal, but the question was legitimate on the cross, and the court should have allowed it to be put, and left it with the witness to avail himself of his personal privilege, or not, as he saw fit.

The twelfth assignment of error is in the admission by the court over defendant's objection of the testimony of Ike King to the effect that the defendant Williams had told him that if he would swear that Ben Baker (another of plaintiff's witnesses) had told him that Dickenson had hired him to swear, and that if he would so swear, he (Williams) would give him a mule to work for a year, and if he won the case he would give him any amount of money he (King) wanted; and that he (witness) had never told Williams that Ben Baker had said that if he and the witness (King) would go in together and swear, they would make a good thing out of Dickenson. "I never told Williams

that Dickenson approached me and solicited me to swear same as Ben Baker." The objection to that part of the evidence of this witness relating to an attempt by the defendant to suborn him, is, that it was put in to contradict and impeach statements of the defendant himself brought out on the cross-examination in response to questions that were not in pursuit of the direct examination, and that were foreign to the issues. Our conclusion is, that this objection is not well taken. While Williams was under cross-examination he was interrogated as to whether he had not made such an attempt to suborn the witness Ike King. The well-settled rule is stated as follows in sec. 449, 1 Greenleaf on Evidence: "A witness cannot be cross-examined as to any fact, which is collateral and irrelavant to the issue, merely for the purpose of contradicting him by other evidence; and if a question is put to a witness which is collateral or irrelavant to the issue, his answer cannot be contradicted by the party who asked the question; but it is conclusive against him." Eldridge vs. State, 27 Fla., 162; 9 South. Rep., 448. But the evidence of this witness, Ike King went further than a mere naked impeachment of Williams' denial upon entirely irrelevant matter. It related to transactions comparatively recent, that directly affected the ultimate res-  ; ues being tried, and bore directly upon the present character and moral principles of the witness, Williams; and was very essential to the due estimation of his testimony by the jury. An attempt to suborn a witness in a cause to give false tes-

timony therein, could only come from a corrupt source. The bribe-giver is equally as corrupt as the bribe-taker; and if either has been attempted in a cause, it is certainly competent to expose it in that cause, the result of whose issues was intended to be affected thereby, so that the jury might properly estimate the moral worth as a witness of the party who made the corrupt attempt. 1 Greenleaf on Evidence, sec. 459; Harris vs. Tippett, 2 Camp., 637. There was no error either in admitting that part of Ike King's testimony wherein he denies having told Williams, the defendant, that Ben Baker had said to him that if he and King would go in together and swear, we could make a good thing out of Dickenson; and that he never told Williams that Dickenson approached him and solicited him to swear the same as Ben Baker. Upon the re-direct examination of the defendant Williams he testified that Ike King had made such statements to him; and the denial thereof by King was a legitimate rebuttal.

The thirteenth assignment of error is the overruling of the defendant's objections to direct interrogatories, and sustaining plaintiff's objections to cross-interrogatories propounded to Prior Wheeler. The objection urged is to the sixth and seventh direct interrogatories to Prior Wheeler, to the effect that they are too general, indefinite and irrelevant. These objections are untenable. The interrogatories objected to sought to draw from the witness conversations had with the defendant Williams in relation to the burning of the gin,

and as to the threats made by Williams towards Dickenson. They were entirely relevant and pertinent to the issues, and were amply definite as to time, place, circumstance and substance in the answers sought. There was no error in sustaining the plaintiff's objection to the third cross-interrogatory propounded by the defense to the witness Prior Wheeler. This question sought to draw from the witness confidential communications had by him with his attorney in reference to the crime; from examination upon which the law protects him, and from the revealment of which the attorney with whom they were had would have been estopped.

The fourteenth and last assignment of error is the overruling of the defendant's motion for a new trial. The various grounds of this motion have already been discussed in what has been said, except the objections urged therein to the charges given by the court to the jury, and we will consider that feature of the motion only. Objection is urged to the following portion of the court's charges to the jury: "You may, in determining the weight you will give to the evidence of a witness or witnesses, take into consideration their manner on the stand; whether interested in the issue of this suit; whether related to the parties; whether biased in favor of either party, or prejudiced against either of the parties; *interest, relationship, bias or prejudice are of great consideration with you* in determining the weight of the witnesses' evidence in this case." "Threats by a person to do an act when re-

cently made before the act threatened to be done is done, is entitled to great weight in determining who did the act that was threatened to be done." "If there was a motive on the part of defendant to destroy plaintiff's property alleged to have been destroyed by defendant procuring its destruction, if this is made apparent to you from the evidence, then it should have great weight with you in determining whether defendant procured Prior Wheeler to destroy, by burning, the property of plaintiff so alleged to have been destroyed." These charges are fatally erroneous. They seriously invade the exclusive province of the jury, who are alone the judges of the WEIGHT to be given, not only to the testimony of the witnesses, but to facts and circumstances adduced in evidence. In these instructions the attention of the jury is pointedly called to various material features in the evidence, and then they are instructed by the court to give "great weight" to those features thus pointed out. The jury were thereby unwarrantedly hampered in their deliberations by a sense of obligation upon their part to attach "great weight" to certain phases of the evidence, that, otherwise, if left free within their own legitimate providce as exclusive arbiters of its weight and credibility, they may have attached thereto none, or but little significance. The rule in such cases is thus correctly laid down in 2 Thompson on Trials, sec. 2420: "The judge must be careful not to trench upon the exclusive province of the jury in determining the credi-

112 SUPREME COURT.

Daniel W. Williams v. Edward T. C. Dickenson.—Opinion of Court.

bility of particular witnesses, or the degree of credit to be given to particular elements of the evidence. He may instruct them as to the *rule*, but not as to the WEIGHT of the evidence; that is to say, he should not instruct them as to the relative weight of the testimony, or the credibility of the witnesses. He should not undertake to control the freedom of their judgment in dealing with the probabilities of the testimony." The WEIGHT to be given to the evidence or to any phase or element thereof, is for the jury alone to determine. Kelley vs. Schupp, 60 Wis., 76; Ott vs. Oyer's Executrix, 106 Penn. St., 6; Grimes vs. State, 63 Ala., 166; Crutchfield vs. R. & D. R. R. Co., 76 N. C., 320; Childs vs. State, 76 Ala., 93; Charleston Ins. & Trust Co. vs. Corner, 2 Gill, 410; Cape Girardeau Union Mill Co. vs. Bruihl, 51 Mo., 144; Covey vs. Hannibal & St. Jo. R. R. Co., 86 Mo., 635. The following charge of the court is also urged to be erroneous : "In determining the issues before you, you are not be governed by the rule that obtains in criminal cases in regard to the evidence, that you must be satisfied beyond a reasonable doubt that he did those things, but you are to find for the plaintiff if you believe from a preponderance of the weight of the evidence before you that he either counseled, hired, obtained or caused Wheeler to burn the gin-house." Were the proposition of law involved in this charge presented to us now for the first time as an original proposition, we would be strongly inclined

to uphold the charge as a correct enunciation of the law, for which there is an abundance of weighty authority. Cooley on Torts, p. 208, and authorities cited: Rippey vs. Miller, 1 Jones (Law), 479 (62 Am. Dec., 177, and authorities cited in notes); Ellis vs. Buzzell, 60 Maine, 209. But the rule has been settled otherwise in this State in Schultz vs. Pacific Insurance Co., 14 Fla., 73, in which it is held that the tortious crime must be proved beyond a reasonable doubt, as in criminal cases. The rule having been thus established in Florida, and being supported also by authority, we do not feel called upon to change it. This charge was therefore, erroneous.

For the errors mentioned in the instructions of the court below to the jury, the judgment is reversed and a new trial ordered.