ABRAHAM J. ABRAHAM AND HIS WIFE, LEONORA J. ABRAHAM, PLAINTIFFS IN ERROR, v. G. M. BALDWIN, DEFENDANT IN ERROR.

| 52 | 151 |
| 53 | 222 |
| e55 | 335 |
| 55 | 431 |

1. Spoken words falsely imputing to another a criminal offense are actionable *per se* and the law presumes malice in their utterance; therefore, it is not necessary in such a case for the plaintiff in an action for slander to prove express malice, unless the words as spoken constitute a privileged communication.

2. A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest, right or duty, and made upon an occasion to properly serve such right, interest or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.

3. The subject in relation to which a communication was made may be privileged, yet a communication made upon that subject may not be privileged. If the restraints and qualifications imposed by law upon the publicity to be given such communications be disregarded, the communication is not privileged. If reasonable bounds be exceeded in making the communication, or if the communication be made knowing it to be false, malice might be inferred which would destroy the privilege.

4. In an action for slander the burden of proving a plea that the communication was privileged is on the defendant. When it is established or conceded that the communication was privileged, the burden is then cast upon the plaintiff to show that the words were uttered from an improper motive, and not for a reason that would otherwise render them privileged.

5. Whether slanderous words uttered are a privileged communication depends upon the circumstances under which they were uttered; and whether or not the facts and circumstances when conceded establish the privilege, is a question of law for the court; but when the facts and circumstances under which the communication was made are not conceded, the court can not as a matter of law determine whether the communication was or was not privileged, and a jury must determine the facts, under proper instructions from the court.

6. Good faith, a right, duty or interest in a proper subject, a proper occasion and a proper communication to those having a like right, duty or interest, are all essential to constitute words spoken that are actionable *per se*, a privileged communication, so as to make the proof by the plaintiff of express malice essential to liability.

7. In determining whether or not a communication is privileged, the nature of the subject, the right, duty or interest of the parties in such subject, the time, place and circumstances of the occasion, and the manner, char-

acter and extent of the communication, should all be considered. When all these facts and circumstances are conceded, a court may decide whether a communication is a privileged one, so as to require the plaintiff to prove express malice. But when all the essential facts and circumstances are not conceded, the existence or non-existence of the privilege should be determined by the jury from all the facts and circumstances of the case, under proper instructions of the court applicable to the case.

8. An action for slander where there is a plea of privileged communication and the testimony tends to show the interest of both the defendant and of the person to whom the slanderous words were spoken in the subject of the communication, and there is testimony tending to show good faith of the defendent in the belief that the communication was true, and also testimony that the slanderous words were uttered on a public street in a high tone of voice in the presence of others not interested in the subject of the communication, one of whom was a hackman who drove the defendant to the place where the slanderous words were spoken, it is error for the court to charge that "there is no testimony in this case to establish the defendant's plea of privileged communication which the jury would be warranted in considering," since the facts and circumstances attending the communication not being conceded, the jury should determine, under proper instructions from the court, whether or not the communication was privileged.

9. In an action for slander it is not error for the court to charge the jury that where a person has uttered words of and concerning another, charging criminal conduct, "the law imports liability" therefor, since the quoted words so used mean no more than an accountability to an action in which the liability would be determined.

10. Where the plea of justification is interposed in an action for slander for imputing a crime, the party justifying must produce evidence of the acts and intent which are

material elements of the crime imputed, sufficiently preponderant to overcome in the minds of the jury the legal presumption of innocence as well as the opposing testimony; but this proof need not go to the extent of convincing the jury beyond a reasonable doubt of the truth of the words imputing the crime. The rule announced in Schultz v. Pacific Insurance Company, 14 Fla. 73, text 121, and reluctantly followed in Williams v. Dickenson, 28 Fla. 90, text 113, 9 South. Rep. 847, requiring imputations of a crime to be proved beyond a reasonable doubt in civil causes is disapproved.

(SHACKLEFORD, C. J., and COCKRELL, J., dissenting.)

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Duval County.

The facts in the case are stated in the Opinion of the Court.

*Pope & Pope* and *Walter M. Davis,* for Plaintiffs in Error;

*C. B. Peeler,* for Defendant in Error.

WHITFIELD, J: On March 6, 1905, the defendant in error brought an action for slander against the plaintiffs in error in the Circuit Court for Duval County, charging that the defendant, Leonora J. Abraham, a married woman, in September, 1904, and in January, 1905, falsely and maliciously, in the presence and hearing of divers persons, said of plaintiff: "He stole my hoe." "He is a thief." A demurrer to the declaration having been overruled, pleas of (1) not guilty, (2) justification and (3)

privileged communication were filed by the defendants. Issue was joined on the three pleas. Replications to the second and third pleas were stricken, on motion. A motion for continuance was denied, and at the trial judgment was rendered for the plaintiff in the sum of two hundred dollars. A motion for a new trial having been denied and an exception taken, the defendants on writ of error assign as errors the giving of charges numbered 1, 2, 3 and 4, and the refusing to give charges numbered 1, 2 and 3, requested by the defendants, proper exceptions having been taken to the giving or refusing to give the charges.

In the charge numbered one the court instructed the jury that "there is no testimony in this case to establish the defendant's plea of privileged communication which the jury would be warranted in considering."

Spoken words falsely imputing to another a criminal offense are actionable *per se,* and the law presumes malice in their utterance, therefore it is not necessary in such a case for the plaintiff in an action for slander to prove express malice, unless the words as spoken constitute a privileged communication.

A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest, right or duty, and made upon an occasion to properly serve such right, interest or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.

The subject in relation to which a communication was made may be privileged, yet a communication made upon

that subject may not be privileged. If the restraints and qualifications imposed by law upon the publicity to be given such communications be disregarded, the communication is not privileged. If reasonable bounds be exceeded in making the communication, or if the communication be made knowing it to be false, malice might be inferred which would destroy the privilege.

The burden of proving a plea that the communication was privileged is on the defendant. When it is established or conceded that the communication was privileged, the burden is then cast upon the plaintiff to show that the words were uttered from an improper motive, and not for a reason that would otherwise render them privileged.

Whether slanderous words uttered are a privileged communication depends upon the circumstances under which they were uttered; and whether or not the facts and circumstances when conceded establish the privilege, is a question of law for the court; but when the facts and circumstances under which the communication was made are not conceded, the court cannot, as a matter of law, determine whether the communication was or was not privileged, and a jury must determine the facts under proper instructions from the court.

Good faith, a right, duty or interest in a proper subject, a proper occasion and a proper communication to those having a like right, duty or interest, are all essential to constitute words spoken that are actionable *per se,* a privileged communication, so as to make the proof by the plaintiff of express malice essential to liability. In determining whether or not a communication is privileged, the nature of the subject, the right, duty or interest of the parties in such subject, the time, place and circumstances of the occasion, and the manner, character and extent

of the communication, should all be considered. When all these facts and circumstances are conceded, a court may decide whether a communication is a privileged one, so as to require the plaintiff to prove express malice. But when all the essential facts and circumstances are not conceded, the existence, or non-existence, of the privilege should be determined by the jury from all the facts and circumstances of the case, under proper instructions of the court, applicable to the case. Jones v. Townsend, 21 Fla. 431; Montgomery v. Knox, 23 Fla. 595, 3 South. Rep. 211; Jones v. Greeley, 25 Fla. 629, 6 South. Rep. 488; Eldridge v. State, 27 Fla. 162, 9 South. Rep. 448; Coogler v. Rhodes, 38 Fla. 240, 21 South. Rep. 109; King v. Patterson, 49 N. J. L. 417, 9 Atl. Rep. 705; Ross v. Ward, 14 S. Dak. 240, 85 N. W. Rep. 182, S. C. 86 Am. St. Rep. 746; Harris v. Zanone, 93 Cal. 59, 28 Pac. Rep. 845; Clemons v. Danforth, 67 Vt. 617, 32 Atl. Rep. 626; Broughton v. McGrew, 39 Fed. Rep. 672; Toogood v. Spyring, 1 Cromp., M. & R. 181; Fresh v. Cutter, 73 Md. 87, 20 Atl. Rep. 774, 10 L. R. A. 67; Jones v. Forehand, 89 Ga. 520, 16 S. E. Rep. 262, S. C. 32 Am. St. Rep. 81; Parsons v. Surgey, 4 F. & F. 247; Fahr v. Hayes, 50 N. J. L. 275, 13 Atl. Rep. 261; Brow v. Hathaway, 13 Allen (Mass.) 239; Nord v. Gray, 80 Minn. 143, 82 N. W. Rep. 1082; State v. Keeman, 111 Iowa 286, 82 N. W. Rep. 792; Byam v. Collins, 111 N. Y. 143, 19 N. E. Rep. 75; Howland v. Blake, 156 Mass. 543, 31 N. E. Rep. 656; Kersting v. White, 107 Mo. App. 265, 80 S. W. Rep. 730; Holmes v. Clisby, 121 Ga. 241, 48 S. E. Rep. 934; Atwil v. Mackintosh, 120 Mass. 177; Harris v. Minville, 48 La. Ann. 908, 19 South. Rep. 925; Alabama & V. Ry. Co. v. Brooks, 69 Miss. 168, 13 South. Rep. 847; Marks v. Baker, 28 Minn. 162, 9 N. W. Rep. 678; 3 Elliott on Evidence, 2448.

The defendant in this case presents a plea of not guilty as well as of jurisdiction and of privilege. The plea under which the defendants claimed the benefit of a privileged communication avers that the defendant, Leonora Abraham, employed one J. S. Jackson, of the firm of Jackson & Stilwile, to do certain work for her; that shortly thereafter defendant learned that said Jackson had employed the plaintiff to do certain parts of said work; that defendant told Jackson she did not want plaintiff to do any part of the work; that she had known plaintiff for some time, and, as she did not consider him trustworthy, did not care to have him so employed; that all such language used to, and in the presence of the said Jackson and his employes meant, and was stated, to mean, that plaintiff had taken and appropriated to his own use property of the defendant to which he was not entitled, and had deprived defendant of her property and interest therein, and defendant at the time had reason to believe, and did believe the same to be true; and all such language was spoken in connection with the business of defendant with said Jackson, under the circumstances and with the meaning aforesaid.

The third count of the declaration, to which alone the plea of privilege is responsive, alleges that "during the month of January, A. D. 1905, in a certain conversation and discourse which the defendant, Leonora Abraham, then and there had of, about and concerning the plaintiff, in the presence and hearing of divers persons, falsely and maliciously, in the presence and hearing of said persons, voluntarily spoke and published of, about and concerning plaintiff the false, scandalous, malicious and defamatory words following, that is to say: 'That man Baldwin (meaning plaintiff) stole my hoe,' and 'that man Baldwin (meaning plaintiff) is a thief,' and also 'He (meaning

plaintiff) is a thief,' and further, 'He (meaning plaintiff) stole my hoe,' meaning and intending thereby to charge that the plaintiff had stolen, taken and carried away the goods and chattels of the defendants," &c.

The defendant, Mrs. Leonora Abraham, testified that in having some work done on her building on West Bay street Mr. Baldwin, the plaintiff, was engaged in putting the brick piers or foundations under the ground floor; that after plaintiff had completed the work, Mr. Hedgecock, who was engaged in the same work, told her that her hoe was gone, and that later he told her that he had seen plaintiff and had asked him about the hoe, and plaintiff told Mr. Hedgecock that defendant owed plaintiff fifty cents, and that he had defendant's hoe and was going to keep it until defendant paid the fifty cents; that defendant made no attempt to get back the hoe, or to have plaintiff prosecuted for taking it. This testimony was corroborated by W. E. Hedgecock, a witness for the defendant, and was in part contradicted by witnesses for the plaintiff.

The defendant, Leonora Abraham, further testified, evidently in support of the plea of privileged communication: "I gave Mr. Jackson the contract for laying a sidewalk in front of my lot on the corner of Hogan and North streets, and learned that Mr. Baldwin was laying it. I got a hack and drove out there and found Mr. Baldwin there doing the work. I did not want him to do any work for me, and told him to immediately stop work. He said that he was working for Jackson and that I would have to see him. We had some hot words, both of us getting angry. I sent for Mr. Jackson, and when he came I told him that I would not have Baldwin do any of my work, and demanded that he have the work stopped. I did there

in the presence of the hackman, Stuart, say to Mr. Jackson that Mr. Baldwin stole my hoe, and I do not remember what all else I may have said on that occasion, as I was very angry. I canceled this contract with Mr. Jackson. I was afterwards sued by Mr. Jackson about this contract, and settled with him." She further testified: "I am positive that I did not say anything to Mr. Jackson about him in any way until I got out there that morning on corner of Hogan and North streets."

A. B. Stuart, for the defendant, testified: "I own and drive a hack on the streets. I, during January, 1905, was employed by Mrs. Abraham here to drive her to the corner of Hogan and North streets. When we got there we found Mr. Baldwin at work laying a sidewalk. Mrs. Abraham commanded him to stop, but he refused to do so. They got into a very hot dispute and both used some very severe language. Mr. Baldwin told her that he was working for Mr. Jackson, and that she would have to see him. She sent for Mr. Jackson, and when he came she told him that she was not going to have Mr. Baldwin doing any of her work, and that he must have him stop work. Mrs. Abraham said to Mr. Jackson that Mr. Baldwin stole her hoe. There was some others passing along the street when she made this remark about Mr. Baldwin."

J. S. Jackson, for the plaintiff testified that Mrs. Abraham gave him a contract to lay a sidewalk on the corner of Hogan and North streets in January, 1905; that Mrs. Abraham learned that Baldwin was putting down the work and went out there one morning and got into a dispute with him; that he was sent for, and when he arrived they were having some words, both apparently angry; that Mrs. Abraham, there, in his presence and in the presence of the hackman who carried her there, as well as some parties passing along the street at the time, said to him in a

high tone of voice: "This man stole my hoe, the one-eyed scoundrel. I am not going to have him do any work for me."

The plaintiff testified that during the month of January, 1905, "Jackson & Stilwile sent me to lay a sidewalk in front of the lot on corner of Hogan and North streets. Mrs. Abraham came out there in the morning soon after I had commenced the work and began to abuse me, when we had some hot words and she ordered me to stop work, which I refused to do. I told her that I was working for Jackson & Stilwile, and that she would have to see them. She sent for Mr. Jackson and he came. She continued to abuse me there in his presence and the hack-driver, as well as some others passing along the street. She said I stole her hoe. I stopped laying the sidewalk and did not complete it."

In this case the testimony tended to show the interest of the defendant and of Jackson, to whom the communication was made, in the subject, and there was testimony tending to show good faith of the defendant in the belief that the communication was true. There was also testimony as to the manner and circumstances under which the communication was made to Jackson in the presence of others, which go to the question, whether, the interest being conceded, the occasion and the communication, under the circumstances surrounding them, were privileged; and this was for the jury to determine under proper instructions from the court. If the defendant disregarded the requirements of the law in the manner of making the communication, and in making it in the presence of parties not interested in the subject who were present by the improper procurement, or because of the improper behavior of the defendant, so as to needlessly injure the

11—S. C.

plaintiff, the question of privilege would be affected there-by, even though the defendant and Jackson were interested in the subject and the defendant in good faith believed the communication to be true.

As the defendant claims the benefit of her plea of priv-ilege, it was error for the court under the facts of this case to charge the jury that "there is no testimony in this case to establish the defendant's plea of privileged communication which the jury would be warranted in consider-ing." The plea with the facts in evidence should have been submitted to the jury for determination upon appro-priate charges from the court on the subject of privileged communications as applicable to the facts of this case.

In the second charge given by the court the following appears: "Where a person has uttered words of and concerning another, charging criminal conduct or any acts which would amount to a violation of the criminal stat-utes, as in this case, the law imports liability, and in order for the defendant to justify or relieve herself therefrom, it becomes necessary for such defendant to establish the truth of the words so uttered to the satisfaction of your minds by competent evidence to the exclusion of and be-yond a reasonable doubt." One objection urged is that the words, " the law imports liability," were misleading to the jury in that they conveyed a meaning of conclusive liability. In the connection in which they were used, the quoted words mean no more than that under the condi-tions named the law implied accountability to an action in which the liability would be determined. The words as used could not have misled the jury or been harmful to the defendants.

The other objection is to the words, "and in order for the defendant to justify or relieve herself therefrom it be-

comes necessary for such defendant to establish the truth of the words so uttered to the satisfaction of your minds by competent evidence to the exclusion of and beyond a reasonable doubt."

This charge was doubtless given on the authority of Schultz v. Pacific Insurance Co., 14 Fla. 73, text 121, and Williams v. Dickenson, 28 Fla. 90, text 113, 9 South. Rep. 847, where it was held that a fact must be established by the same evidence, whether it is to be followed by a civil or a criminal consequence; and that the character of the fact to be proved, and not the position of the party deter mines the degree of proof to be required.

This rule is said to have been established in England because the plaintiff may there be tried for the crime imputed to him upon a verdict of justification without the intervention of a grand jury. No such result follows here, therefore the reason for the rule does not exist. See Cook v. Field, 3 Esq. 133; Wilmett v. Harmer, 8 Car. & P. (34 E. C. L. 589) 695; Ellis v. Buzzell, 60 Me. 209.

The decisions heretofore made by this court upon the point have not become the basis of property rights, nor do they constitute a distinct policy in the administration of justice, and as no harm can result in establishing a rule in accord with reason and the great weight of authority, the rule as first announced in Schultz v. Pacific Insurance Co., *supra,* and reluctantly followed in Williams v. Dickens, *supra,* is now disapproved.

The true rule is that in order to justify words imputing a crime the party justifying must produce evidence of the acts and intent which are the material elements of the crime imputed, sufficiently preponderant to overcome in the minds of the jury the legal presumption of innocence as well as the opposing testimony; but this proof need

not go to the extent of convincing the jury beyond a reasonable doubt of the truth of the words imputing the crime. See McBee v. Fulton, 47 Md. 403, 429; Ellis v. Buzzell, 60 Me. 209; Edwards v. Knapp, 97 Mo. 432, 10 S. W. Rep. 54; Rippey v. Miller, 1 Jones' Law (N. C.) 479, S. C. 62 Am. Dec. 177; 8 Ency. Ev. 233; 17 Cyc. 759; 1 Cooley on Torts (3rd ed.), 417; Newell on Slander and Libel (2nd ed.), 795; 4 Wigmore on Evidence, Sec. 2498.

The Chief Justice and Mr. Justice Cockrell do not concur in overruling the decisions on this point in the cases of Schultz v. Pacific Insurance Co., and Williams v. Dickenson, *supra.*

This disposes of all the questions argued by the plaintiffs in error.

For the error in the first charge in withdrawing from the jury the question of privilege presented under the third plea the judgment is reversed and the cause is remanded for a new trial.

Taylor, Hocker and Parkhill, JJ., concur;

Shackleford, C. J., and Cockrell, J., concur except as stated in the opinion.