334 So.2d 293 (1976)
Donald R. CHAPMAN and Vivian D. Chapman, Appellants (Plaintiffs),
v.
Louise FURLOUGH et al., Appellees (Defendants).
No. BB-60.
District Court of Appeal of Florida, First District.
June 23, 1976.
Rehearing Denied July 21, 1976.
*294 Robert B. Kane, Tallahassee, for appellants.
Ford L. Thompson of Thompson, Wadsworth, Messer, Turner & Rhodes, Tallahassee, and Sidney Matthew of Tobias Simon and Elizabeth duFresne, P.A., Miami, for appellee.
MILLS, Judge.
The plaintiffs appeal from a summary final judgment entered in favor of Daniels and Furlough in a defamation suit.
The issue before us is whether the defamatory statements made by Daniels and Furlough are absolutely or qualifiedly privileged.
The plaintiffs sued Daniels, a tenured teacher and former coach of Godby High School, and Furlough, an assistant principal of Godby High School, charging that they slandered plaintiffs' business, the Snak Shop. As defenses to the suit, Daniels and Furlough alleged that their statements were absolutely or qualifiedly privileged.
Daniels is a trouble shooter for the principal. Furlough is responsible for student discipline, attendance, and truancy. Both are responsible for investigating complaints about truant students, investigating suspected drug involvement of students, and counseling with students and their parents.
Plaintiffs' complaint is based upon conversations between Daniels and Furlough, and the father of a student at Godby High School. The parent solicited Daniels' assistance in searching for his son who was improperly absent from the campus and had a drug problem. After a lengthy search for the boy, Daniels suggested that he and the parent proceed to the Snak Shop to see if the boy was there.
The parent stated that the following occurred:
"As we left or were going from that male adult in the parking lot, the coach [Daniels] said  and I can't quote how he said it  but he said, in essence, `would you like to see the house where most of the dope around here is sold.' And he said `house'. So I had no idea what he meant. But he went down to the corner, down to Tharpe and he turned into the Snak Shop and I don't want to quote him. He said, `this is the place where most of the dope is sold.' He said, `here in the side yard I discovered a whole bag of  in the west side of the Snak Shop', he said, `I discovered a big bag of dope and,' he said, `there is another problem area directly across in the path through the woods that leads back from that corner that the Snak Bar is on, Snak Bar and gas station is on, to the school, diagonal to the woods, and', he said, `that is a great area for using and peddling dope."
Subsequently, the parent conferred with Furlough and the parent stated that the following transpired:
"Now, as to Mrs. Furlough, I discussed with her just exactly what had happened when this coach took me over there and I made her aware of what he said. And I'm sure that in what she said, she reinforced what the coach had told me. How she said it, I couldn't, of course, say. But there was no denial that things were different, other than what the *295 coach had said... . How she said or affirmed the truth of this, I don't know, I don't recall at this moment. It may have been a nod, it may have been a smile, I don't know. But there was no effort on her part to indicate that she thought differently or felt differently."
The parent also stated that Furlough encouraged him to write a letter to the owners of the Snak Shop:
"... I'm not sure the word `will', but her intentions were such to indicate to me that she was telling me, `you will write the Snak Shop owner'. And I indicated to her that I didn't know what I should write. By phone, she started dictating and she got along there quite aways and I was scribbling on.... Now what she was attempting to do, and I was buying, was the fact that this kid should no longer go into that Snak Shop. The fact that she had pulled children out of there at 9:30 in the morning was the straw that broke the camel's back."
The trial court granted the motions for summary judgment filed by Daniels and Furlough, finding that their statements were absolutely privileged, and if absolute privilege did not extend to them, qualified privilege did extend.
We decline to extend absolute privilege to an assistant principal and to a tenured teacher who is performing special duties for the principal. We find neither precedent nor reason to extend absolute privilege beyond its narrow limits.
Qualified privilege does extend to their communications.
"A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest, right, or duty, and made upon an occasion to properly serve such right, interest, or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right, or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.
......
"Good faith, a right, duty, or interest in a proper subject, a proper occasion, and a proper communication to those having a like right, duty, or interest, are all essential to constitute words spoken, that are actionable per se, a privileged communication, so as to make the proof by the plaintiff of express malice essential to liability. In determining whether or not a communication is privileged, the nature of the subject, the right, duty, or interest of the parties in such subject, the time, place, and circumstances of the occasion, and the manner, character, and extent of the communication, should all be considered. When all these facts and circumstances are conceded, a court may decide whether a communication is a privileged one, so as to require the plaintiff to prove express malice... ." Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906).
Parents are responsible for their children's school attendance. Section 232.09, Florida Statutes. A principal is required to enforce attendance regulations. Section 232.19, Florida Statutes. A principal is authorized to delegate to any teacher such responsibility for the control and direction of students as he may consider desirable. Section 232.26(1), Florida Statutes. Section 231.09, Florida Statutes, defines the duties of the members of the instructional staff, which include the effects of alcohol and narcotics upon the human mind and body.
The evidence is uncontroverted that the communications by Daniels and Furlough were made in good faith, they were made with reference to matters in which *296 Daniels and Furlough had a duty, they were made to a parent who had a corresponding interest, they were made on occasions which properly served their duty, and they were made under circumstances fairly warranted by the occasion.
Under these circumstances, plaintiffs were required to prove express malice, but did not do so. They filed no affidavits and the record is silent as to any fact which would indicate express malice. Therefore, the trial court properly entered summary judgment for Daniels and Furlough, and properly found that qualified privilege extended to them.
The judgment is affirmed.
BOYER, C.J., and McCORD, J., concur.