AMASA R. MOORE, APPELLANT, *v.* THE MANUFAC-TURERS' NATIONAL BANK OF TROY AND SAMUEL O. GLEASON, RESPONDENTS.

*Matter in mitigation of a libel.*

In an action for libel, based upon the publication by the defendant of a bill of particulars, which related to a defalcation by the cashier of a bank, it is improper for the court, although the answer does not set up any facts in mitigation of the publication, to charge the jury that no circumstances in mitigation of the publication can be considered by it, as such a charge would require the jury to disregard all the circumstances of the transaction which had been proved by the plaintiff himself.

A communication, made by a bank to one of the sureties upon a bond given by its cashier for his fidelity in that position, in regard to an alleged defalcation on the part of the cashier, is privileged, and the mere fact that such communication was to the effect that the cashier had committed acts of defalcation by collusion with a third person, does not, as to such third person, deprive such communication of its character as a privileged communication.

In an action, brought by such third party to recover damages for an alleged libel contained in a bill of particulars served by the bank, it is not error to admit in evidence the pleadings in the action brought by the bank in which the bill of particulars was furnished.

When the circumstances surrounding a communication are such as to confer upon it the character of a privileged communication, the presumption of malice ceases to exist, no matter what the nature of such communication may be.

*Marsh* v. *Ellsworth* (50 N. Y., 309) distinguished.

APPEAL by the plaintiff from a judgment in his favor, entered upon the verdict of a jury rendered at the Rensselaer Circuit in February, 1888, for $200 damages, in an action brought to recover for an alleged libel published by the defendant, a banking corporation, of and concerning the plaintiff, by which it was charged that the plaintiff, who had been the teller of the defendant, had been guilty of conspiring and colluding with one Charles M. Wellington, a cashier of the defendant, in abstracting or willfully misapplying the moneys and funds of the said defendant, and also from an order denying a motion to set aside a verdict on the ground that the damages allowed were insufficient.

*Matthew Hale*, for the appellant.

*E. L. Fursman*, for the respondents.

LEARNED, P. J.:

This is an appeal by the plaintiff from a judgment in his favor on a verdict, and from an order denying a motion to set the verdict aside as for insufficient damages. The action was for libel. The complaint contained two counts. The first charged that the defendant published, concerning the plaintiff, a certain writing entitled "a partial statement in detail," etc., containing the false and libelous words, etc. It then set forth certain matters alleged to be libelous, which charged that the cashier of the bank, by collusion with plaintiff, had drawn certain moneys.

The second count charged defendants with issuing a certain writing called a "bill of items," containing false and libelous words, and settting forth these words, which were the same with those in the first count.

The answer is to the whole complaint and is not special to each count. It avers that the cashier of the bank gave a bond with

sureties; that after his defalcation the bank sued the bond; that in such suit the bank served a bill of particulars, set forth at length, which, in fact, contains the alleged libelous words.

The answer further alleges in mitigation, that the bank served such bill believing it to be true, and without intent to injure the plaintiff, etc.

On the trial it appeared that, after the action against the sureties had been commenced, Judge DANIELS, whose wife was an administratrix of one of the sureties and was a defendant, called at the bank for the particulars of their claim, and was there given the paper set up in the first-count. The plaintiff insisted and asked the court to charge that, in regard to this publication, no circumstances of mitigation were pleaded and none could be considered by the jury. The court declined to charge in that form and the plaintiff excepted.

Now, it is true that the answer does not set up any facts in mitigation of this publication to Judge DANIELS; the language of the answer being confined to the bill of particulars. It may be, therefore, that no facts which had not been pleaded could have been proved. But no question seems to have been raised as to any offer of proof. The circumstances of the publication were proved by plaintiff, and it was only on these circumstances that any question of mitigation arose. To say that no circumstances of mitigation could be considered would be to say that the jury, in assessing damages, must disregard all the circumstances of the transaction which had been proved by the plaintiff himself. This would not be proper.

The plaintiff had proved not merely that defendants had published the libel, but he had proved how, to whom and to what extent they had published it. Now, to charge that the jury might not consider any circumstances of mitigation, would have directed them, if they chose, to punish the defendants as heavily as if they had given publicity in a newspaper to these charges of their mere voluntary act. The judge, therefore, properly declined to charge in that form.

The defendants claim that these papers were privileged communications, which claim the plaintiff denies. This point should be considered.

In *Klinch* v. *Colby* (46 N. Y., 427), the proper meaning of a privileged communication is said to be " that the occasion on which it was made rebuts the inference arising *prima facie* from a statement prejudicial to the character of the plaintiff, and puts it upon him to prove that there was malice, in fact, and that the defendant was actuated by motives of personal spite or ill-will, independent of the circumstances in which the communication was made." And again : " A written communication between private persons, concerning their own affairs, is *prima facie* privileged." And again : " When both the party making and the party receiving the communication have an interest in it, it has never been doubted that it was privileged." (See, also, *Ormsby* v. *Douglass*, 37 N. Y., 477 ; *Altwill* v. *Mackintosh*, 120 Mass., 177.) It is unnecessary to cite other cases, as the rule is so clearly stated above. Now, under the definition thus given, it is plain that both the statement given to Judge DANIELS and the bill of particulars were privileged communications. Indeed, we do not understand that the plaintiff claims that they were not privileged communications, so far as they referred to Wellington's acts. But the plaintiff insists that, where these communications stated that Wellington did these acts *by collusion with the plaintiff*, they were not privileged as to plaintiff. It seems to us doubtful whether such a distinction can be made; for it will appear by the definitions that not the contents of the publication, but the circumstances under which it is made, give the privileged character. If the communication is not defamatory, then there is no need of asserting the privilege. But when the circumstances make the communication privileged, then the presumption of malice ceases, no matter what the language.

The plaintiff, on this point, relies on four cases : *Hastings* v. *Lusk* (22 Wend., 410) ; *Ring* v. *Wheeler* (7 Cowen, 725) ; *Gilbert* v. *People* (1 Denio, 41) ; *Marsh* v. *Ellsworth* (50 N. Y., 309). These cases are all of the same character, and all refer to arguments of counsel in actions and the like. The principle laid down is stated in the last case, and, therefore, we need not examine the others. " A counsel or party conducting judicial proceedings is privileged in respect to words and writings used in the course of such proceedings, reflecting injuriously upon others, when such words are pertinent and material to the questions involved; and within such limit,

the protection is complete, irrespective of the motive with which they are used." "The privilege under consideration, it will be seen, is much more extensive than in many other cases where communications are termed privileged, as in giving the character of servants," etc. "In the latter the extent of the privilege is to repel the presumption of malice   *   *   *   and bar a recovery in the absence of proof of express malice."

It is in regard to the privilege of counsel, as it is called, that it is said that it can only be claimed when the words are pertinent. Because that privilege is complete, irrespective of motive. Counsel are not liable even for actual malice, provided their words are pertinent. But, as is pointed out in the case cited above, in the other class of privileged communications the privilege only throws on the plaintiff the burden of proving express malice. Hence, when we look at the definitions above given of such privileged communications, we find that it is the occasion on which the communication is made, and the interest of the parties in the subject which make such communications privileged. Nothing is said in those cases as to the language being pertinent or material, because the privilege is not complete, irrespective of motive, and any proper circumstance may be shown to the jury as evidence that there was express malice. But when the occasion and the interest of the parties are such that the communication comes within the definition above given, and, therefore, is privileged, then the *prima facie* presumption of malice is removed. Now, in this case, both of these communications were made under such circumstances and between such parties that they were privileged, that is to say, not that defendants were free from every liability, whatever their motive, but that the circumstances removed the *prima facie* presumption of malice and threw on the plaintiff the burden of proving malice expressly.

In this view of the case, we think the plaintiff has nothing of which to complain. He rested his case simply on proof of the publication of these two writings under the circumstances which have been briefly stated above. It seems to us that on that proof these were privileged communications, that is to say, they were made under such circumstances that the presumption of malice, which ordinarily arises, did not exist. True, the defendants might have been more cautious and might not have explained the manner in

which Wellington took the money. True, also, that if the plaintiff could show express malice, the defendants would be liable, for they were not clothed with that privilege of counsel stated in *Marsh* v. *Ellsworth.* They were only free from that presumption of malice which ordinarily arises from the publication of a writing injurious to another. But the court allowed the jury to inquire whether or not the defendants had acted with malice, or whether they had given these statements in good faith, even without proof of express malice. If it should be urged that the introduction unnecessarily of plaintiff's name was, of itself, some proof of express malice, the plaintiff has had the benefit of that view and the jury have given him a verdict.

In the case of *Prescott* v. *Tousey* (53 Supr. Ct. [21 J. & S.], 56) it was held that the libelous matter in a bill of particulars was absolutely privileged as being a step necessary in a legal proceeding. This case followed those above cited, which have principally arisen on arguments of counsel. If the plaintiff claims that the present case does not come within the protection of such absolute privilege, because the language affecting him was not pertinent, still the general right of privilege remained which has been explained in citations from *Klinch* v. *Colby,* and the burden of proving malice rested with the plaintiff.

We do not think it was error to admit the pleadings in the action of the *Bank* v. *Enos and others,* that being the suit in which the bill of particulars was furnished. The papers showed the existence and the character of the action in which such bill was furnished. It does not seem to us that the proof of the names of the directors of the defendant was material in any way, and the admission was not such an error that a new trial should be granted therefor. There is a remaining question as to the adequacy of damages. The publication of the first paper was simply the giving of it to Judge DANIELS. No other publicity was made by defendants. The publication of the second was by serving it on attorneys in the action. Certainly the publication in neither case was extensive. We see no reason to think that the jury erred in the amount which they awarded.

Judgment affirmed, with costs.

LANDON and INGALLS, JJ., concurred.

Judgment and order affirmed, with costs.