# KERSTING, Respondent, v. WHITE, Appellant.

### St. Louis Court of Appeals, May 17, 1904.

### Opinion by Bland, P. J.

1. **SLANDER AND LIBEL: Privileged Communication.** A communication, which would otherwise be slanderous and actionable, is privileged when made upon a subject in which the party making it has an interest or in reference to which he has a duty, if made to a person having a corresponding interest or duty.

2. ———: ———. Where defendant in an action for slander was a member of a society for the promotion of moral conduct on the part of its members, and, pending an investigation by the society of the behavior of one member charged with immoral conduct, the defendant communicated to a member of the society an alleged slanderous statement, made to him concerning the accused member, believing it to be true, which connected the plaintiff, not a member of the society, with the immoral conduct of the member under investigation, the communication was privileged.

3. ———: ———: **Pleading.** If the answer failed to allege that the communication was a privileged one, the defendant could not interpose that as a defense. But if plaintiff, in making out her case, showed the communication was a qualifiedly privileged one, she should have been nonsuited, notwithstanding the failure of the defendant to plead his privilege.

4. ———: ———: ———: **Abandoned Answers.** Where the plaintiff offered in evidence abandoned answers of the defendant, which stated facts showing the alleged slanderous matter to be a privileged communication, she was not bound by all the statements of those answers, but it was a question for the jury whether the communication was made under circumstance which made the actionable words privileged.

5. ———: **Damages: Evidence.** Evidence that neighbors, who were friendly to plaintiff before the circulation of the slanderous report, would not speak to her or look at her afterwards, was inadmissible because it did not show a loss of professional earnings or trade following the publication, and because there was no evidence to show that such conduct was caused by the slander.

### Separate Opinion by Goode, J.

6. ———: **Privileged Communications: Jury Question.** If the circumstances, under which words alleged to be slanderous are spoken, are in dispute, such circumstances must be found by the jury under proper instruction to determine whether the words were privileged.

7. ———: ———: **Malice.** Some words, which would enjoy a qualified privilege when uttered in good faith, are actionable if the motive was slanderous or if they were known to the untrue, and malice may be implied from the fact that the statement was false.

8. ———: ———: **Abandoned Answers.** The abandoned answers introduced by plaintiff, alleging the circumstances under which the words were spoken, showed they were privileged, unless the defendant's motive was malicious, and it is immaterial that the plaintiff was not a member of the society, if the defendant acted in good faith, nor is it material whether the society was a church or not.

9. ———: ———: ———. Such abandoned answers were not conclusive as to the facts stated, but were for the jury to weigh, and the allegations therein of a laudable motive, on the part of the defendant, were to be considered along with the falsity of the charge, on the issue of malice or good faith and whether the circumstances rendered them privileged.

10. ———: **Repeating Slander: Mitigation.** It is no defense to an action for slander to prove that defendant only repeated the charge made by another, if he does so knowing it to be untrue or from a desire to injure the person slandered, though if one only repeats the remark, with no evil intention, and gives his informant's name, he may plead the fact in mitigation of damages.

Appeal from St. Louis Circuit Court.—*Hon. John W. McElhinney*, Judge.

REVERSED AND REMANDED.

*Chester H. Krum, M. Kinealy, Kinealy & Kinealy* and *F. A. Heidorn* for appellant.

(1) The petition on which this case was tried neither stated nor asked any punitive damages, and only compensatory or actual damages could be awarded had it have been shown that defendant spoke the alleged

slanderous words. R. S. 1899, sec. 574, p. 251; Berryman v. Cox, 73 Mo. App. 72. (2) The compensatory damages must be the natural and necessary consequence of the speaking of the alleged slanderous words. Newell on Def. Slan. and Libel (1 Ed.), 926. (3) The answer put in evidence by plaintiff constituted a complete defense to this action and under the instructions of the court were to be taken as true. By them plaintiff proved herself out of court. Finlay v. Steele, 159 Mo. 307; Landis v. Campbell, 79 Mo. 440; Sullivan v. Commission Co., 152 Mo. 268; 18 Am. and Eng. Ency. of Law (2 Ed.), 1036.

*Kinealy & Kinealy* for appellant.

(1) A document offered and read in evidence by plaintiff voluntarily, and without qualification, is binding on her, and she can not be permitted to impeach its integrity or to assail the correctness of its statements. 1 Thompson on Trials, p. 640, sec. 836; Maclin v. Ins. Co., 33 La. Ann. 801; Briscoe v. Huff, 75 Mo. App. 291. (2) The documentary evidence put in by plaintiff, being uncontradicted, should have been accepted by the jury as true. Richenbach v. Ellerbe, 115 Mo. 588; Gannon v. Gas Co., 145 Mo. 502; Hendrickson v. Grable, 157 Mo. 48.

*L. P. Crigler* for respondent.

In civil cases it is only "where the court can say that the alleged matter is not reasonably capable of any defamatory meaning" that a verdict can be directed for defendant. St. James Military Academy v. Gaiser, 125 Mo. 527.

*L. P. Crigler* and *Robert Kelly* for respondent.

(1) Privilege is an element of justification. A privileged communication is a complete justification;

but it must be pleaded. A justification in pleading is "a showing of a good reason why one did such a thing." Burrell's Dictionary; Trimble v. Foster, 87 Mo. 49; McClusky v. Pub. Co., 125 Mo. 339; Morgan v. Rice, 35 Mo. App. 591. (2) Pleadings are admissible and binding on the party making them. The party offering is not bound by all that he may read in order to get the admission. In 95 Mo. 573, the whole petition was read. In other cases cited two whole petitions have been read to prove a single date. Walser v. Wear, 141 Mo. 463-464; Snyder v. Railroad, 112 Mo. 527; Spurlock v. Railroad, 125 Mo. 404; Dowzlat v. Rawlings, 58 Mo. 75; Anderson v. McPike, 86 Mo. 293; Balley v. O'Bannon, 28 Mo. App. 39.

## STATEMENT.

Omitting caption the second amended petition on which the cause was tried is as follows:

"Plaintiff files this, her second amended petition, leave of court first had and obtained, and states that she is a resident of the city of St. Louis, has never been married and at all times hereinafter mentioned was, and is now single and unmarried.

"That defendant Robert White, is a resident of Woodland, St. Louis county, and State aforesaid.

"That for and during the last year from about October, 1900, to the time of filing this petition, plaintiff was in the employ of one J. C. Elms as a servant for hire at his residence in Woodland, St. Louis county, Missouri, and as such servant, she had charge of the house and household affairs of J. C. Elms, together with the care and custody of his three small children, he, the said Elms, being, during all this time, a widower, and he, the said Elms, during all this time, was living and making his home at his said residence in Woodland, where and in which said residence he and his minor children and this plaintiff were living together; and the fact that

plaintiff was in the employ of said Elms as a servant at his house and home in Woodland, and that the plaintiff was living there in the same house and home at Woodland with the said Elms, as his servant, and that the said Elms lived at his said home in Woodland, at all times hereinafter mentioned, were known to the defendant and to the said Edward Henry, hereinafter referred to.

"For cause of action plaintiff states that at a date unknown to her, but within two months prior to the filing of this petition, and about the last of May or the first of June, 1901, in the city of St. Louis, and in the presence of one Edward Henry, a citizen of St. Louis, and at that time an employee of a large dry goods establishment of the city of St. Louis, and to the said Edward Henry used and published the following false and slanderous words, to-wit: 'Mr. Elms and Miss Kersting are living in sin together at Elms' house.' And that when the above words were spoken by defendant to the said Henry, both Henry and defendant knew of the relation of master and servant existing between plaintiff and Elms; knew that they lived together in the same house; and knew that J. C. Elms was a widower, and that plaintiff was an unmarried woman in his, Elms, employ as a house servant at that time.

"That by said words so used the defendant intended to and did refer to this plaintiff; and that by said words he intended to and did charge the plaintiff with the offense of cohabiting with the said Elms, and with being a fornicatress, and that the said words were so understood by the said Henry at the time they were spoken to him.

"That said words so spoken, used and published, were and are false; that they were known to be false by defendant at the time he spoke them; that they were falsely and maliciously spoken by defendant, of and concerning this plaintiff, and were spoken with the in-

tent and purpose of defaming the good name and reputation of plaintiff.

"That by said false, slanderous and malicious words spoken, used and published as aforesaid, plaintiff was made to suffer great mental pain; was greatly damaged in her good name and fame, and that by said false and malicious words spoken, used and published as aforesaid, plaintiff's reputation as a pure, virtuous and chaste woman was and is greatly injured; and that she has suffered great humiliation and disgrace thereby; that she has been brought into contempt and ridicule; exposed to public wrath and hatred, and deprived of the public countenance and social intercourse amongst her former friends and acquaintances, all to her damage in the sum of $25,000. Wherefore plaintiff prays judgment against defendant in the sum of $25,000 and for her costs.''

The answer was a general denial.

The plaintiff in her own behalf testified, in substance, that she was thirty-three years of age; that she was unmarried and for over two years prior to the trial had been employed by Mr. J. C. Elms, as his housekeeper, and to look after his two minor children, one nine and the other seven years of age; that the home of Mr. Elms was in Woodland (a suburb of the city of St. Louis); that he had been a widower about three years, and kept in his employ a cook and girl to do general housework; that plaintiff was acquainted with defendant, Robert White; that Mr. White lived five or six blocks from Mr. Elms and used to visit there; that she had seen him five or six times at the Elms residence conversing with Mr. Elms; that she knew Edward Henry; that prior to the institution of her suit and prior to his marriage, Mr. Henry usually came out to the Elms home on Saturday evenings and stayed until the following Monday morning; that he saw her and knew that she was employed by Mr. Elms, saw her working around the house fixing the beds and attending to the

table; that the last time he came out he brought his wife, to whom he had then been recently married; that plaintiff's father and mother had been dead for a good many years; that prior to entering the employ of Elms she had for about seventeen years lived with her widowed sister in the city of St. Louis; that she had been at Mr. Elms' about nineteen months before she heard of the alleged slander against her; that she first heard it from one Stuckert, who lived in the Laclede building in the city of St. Louis; that after she had a conversation about it with Stuckert, she went to see Edward Henry, in company with one of her sisters, sometime in April, 1901, at his place of business with Scruggs, Vandervoort & Barney; that after having a conversation with Henry, she went to defendant's home to see him about the slander, but he was not in; that she never heard anyone except Stuckert and Henry say anything in regard to the alleged slander.

The plaintiff offered in evidence three answers, which the defendant had theretofore filed in his cause, as proving or tending to prove that defendant admitted that he had spoken the defamatory words charged. Defendant's counsel objected and called the attention of the court to the fact that on a former trial defendant had denied under oath that he spoke the words; that he had the stenographic notes of his evidence taken at the former trial and asked permission to examine defendant on his *voir dire* which request was denied by the court, to which ruling defendant saved an exception.

In respect to the alleged slander and its publication, the three abandoned answers are substantially alike. The second one (omitting caption) is as follows:

"Defendant for amended answer to plaintiff's petition filed, by leave of court, states that he has no knowledge or information sufficient to form a belief whether or not plaintiff is a resident of the city of St. Louis, or has never been married, or is single or unmarried, or was so at all times hereinafter mentioned, or that said

Elms paid her the sum of twenty-five dollars a month.

"Defendant denies that the words alleged in said petition to have been spoken, used or published by him of or concerning plaintiff and said Elms were known to defendant to be false at the time which it is alleged he spoke them or at any time; or that they were falsely or maliciously spoken by defendant, or were spoken with the intent or purpose of defaming the good name, or reputation of plaintiff; or that defendant by said words alleged to have been spoken by him of or concerning plaintiff intended to charge that plaintiff was a fornicatress or guilty of fornication; and as to whether said words were false this defendant has no knowledge or information sufficient to form a belief. This defendant further denies that because of any words spoken, used or published by him, or concerning plaintiff and said Elms plaintiff was made to suffer great mental pain, or was damaged in her good name or fame, or that her reputation as a pure, virtuous or chaste woman was or is injured; or that she had suffered humiliation or disgrace thereby, or that she had been brought into contempt or ridicule or exposed to public wrath or hatred, or deprived of the public countenance or social intercourse or amongst her former friends or acquaintances.

"Defendant further states that at the times mentioned in said petition, he and the said Edward Henry were members of a society of about forty Christian persons, associated together for moral and spiritual services and exercises; and one J. C. Elms, of Woodland aforesaid, was also a member of said society and the plaintiff was employed by said Elms as housekeeper and resided at the home of said Elms at Woodland aforesaid; that under the rules and regulations of said society, no person would then be permitted to remain a member of it who was immoral or lived an immoral or sinful life, and under the rules and regulations of said society it was then the duty of any of its members

who had acquired knowledge, or to whom a charge is made by any reputable person, that any other member is immoral or is leading an immoral or sinful life, to communicate such charge or knowledge to the other members, in order that such charge shall be inquired into, and the accused person so known or charged to be immoral or leading an immoral or sinful life might be cited to appear before the members of said society and answer said charge or give assurance of repentance and reform, or otherwise be expelled from said society; and should the result of a preliminary inquiry show persuasive grounds for such charge, to suspend such accused member pending a hearing of such accused member on such charge.

"Defendant further states that shortly before the time of the alleged speaking of the alleged slanderous words set forth in plaintiff's petition, one Mrs. Blanch Ward, who was a daughter of the said J. C. Elms, and a member of the Christian church, and a resident of said city of St. Louis, Missouri, met this defendant and made a statement to him that the said J. C. Elms was at that time living in sin at the house of said Elms, and other statements tending to show that plaintiff was a participant in the sinful life of said Elms which she charged against him; and further stated, then and there, that defendant and the other members of said society were unfaithful to their duties as such members in permitting the said Elms to lead such a life and continue a member of said society, and earnestly desired defendant to report her said statement to said society and induce the members thereof to cause the said Elms to desist from such conduct or to sever his connection with it; that defendant was acquainted with said Mrs. Blanch Ward and knew her to be sincere and truthful and interested in the matter of said statement and charge made by her as aforesaid and in causing the said Elms to lead a moral life; and that her sisters had previously

on various occasions made charges of a similar nature against the said J. C. Elms, and defendant therefore fully believed the statement above mentioned, made by said Mrs. Blanch Ward to him, defendant, of and concerning the said Elms and plaintiff, and had other reasonable cause to believe said statement because of remarks made by said Edward Henry to him, to the same effect, previous to any statement of defendant to said Henry against said Elms, in and to said society, that he was living in sin, and a preliminary investigation was made by and amongst the members thereof in order to ascertain if sufficient evidence existed to justify a formal charge against him, said Elms, and a demand on him to stand a trial thereon; of which charge and investigation this defendant had knowledge at the time last mentioned; that at a meeting of said society held for the purpose of making said investigation said Henry gave testimony as to certain acts of plaintiff and said Elms at the house of said Elms, witnessed by him, said Henry, which tended to support said charge made against said Elms in and by said society, and implicated plaintiff as participating therein with said Elms, and thereupon said investigation was adjourned to another day; that this defendant was not present at said last meeting of said society, and in a few days thereafter, and before said investigation was resumed by said society, he met said Henry and made inquiries as to what had occurred at said meeting of said society so that he might be able to assist at said investigation at the next meeting of said society held therefor, whereupon said Henry stated to defendant what had occurred and the testimony aforesaid given by him, said Henry, and thereupon this defendant repeated to said Henry, in connection with the statement last mentioned of said Henry, the statement aforesaid made to defendant by said Mrs. Blanch Ward, and then and there told said Henry that said statement of said Mrs. Blanch Ward so repeated to him, said Henry, by defendant as afore-

said was made to defendant by said Mrs. Blanch Ward, the daughter of said J. C. Elms, and that is all this defendant ever spoke to said Henry about or concerning the said Elms and plaintiff and is the alleged slanderous matter set forth in plaintiff's petition as having been spoken by this defendant.

"Defendant further states that no third person was present or within hearing when he repeated said statement of said Mrs. Blanch Ward to said Henry as aforesaid, and that when he, defendant, repeated said statement of said Mrs. Blanch Ward to said Henry he believed it to be true and he repeated it, said statement last mentioned, to said Henry in good faith and for the sole purpose of aiding said investigation and in the performance of his duty as a member of said society and in obedience to its rules and was not actuated by any malice whatever towards or against plaintiff or said Elms and bore no malice whatever toward or against either plaintiff or said Elms. .

" And this defendant further states that in no event is plaintiff entitled to recover as much as one dollar against him in this action, because prior to the time defendant repeated to said Henry the statement of said Mrs. Blanch Ward set forth in the fifth paragraph of this answer—which fifth paragraph is hereby made a part of this paragraph—the said Henry had been told by some person unknown to this defendant that said J. C. Elms and plaintiff were living in sin at the house of said Elms; and because of being so told, and of some acts witnessed by him, said Henry, in the house of said Elms, and because of what he was told, and without regard to, and irrespective of, said statement of said Mrs. Blanch Ward as repeated to him by defendant, he, the said Henry, at the time defendant repeated said statement of said Mrs. Blanch Ward to him, said Henry, believed that said J. C. Elms and plaintiff were living in sin at the house of said Elms."

Plaintiff testified that she went to see Henry twice

in regard to the matter; that the report alleged to have been made against her by defendant was that "Mr. J. C. Elms and Miss Kersting are living in sin together at Elms' house;" that she knew Mr. and Mrs. Buss and before the alleged slander they were friendly with her; that she had met them at a neighbor's house and after the slander got into circulation they would not look at or speak to her; that she never worked out before she entered the employ of Elms; that after she heard the charge circulated against her, she had nervous headache, lost twenty pounds of flesh and could not rest.

Other witnesses for plaintiff who had known her for many years testified to noticing a marked change in her appearance and demeanor after the slanderous report got into circulation; that she was restless, nervous and appeared to be very much depressed.

Plaintiff offered a number of witnesses, who had been acquainted with her for a number of years, all of whom testified to her good character for morality, and it was finally conceded by defendant's counsel that she was an honest woman.

Defendant offered no evidence, but offered a peremptory instruction to find for defendant which the court refused to grant.

BLAND, P. J. (after stating the facts).—This instruction for nonsuit raises the question whether or not plaintiff, by reading the whole of defendant's three answers as evidence in the case, proved herself out of court by offering evidence tending to show that the communication she complains of was qualifiedly a privileged one and by failing to prove actual malice in its publication. These answers tend to show that Elms, Henry and the defendant were members of a religious society banded together for the purpose of conducting religious and moral teaching and exercises; that complaint had been made to the society that Elms was vio-

lating the tenets of the society by living in a state of sin with the plaintiff at his home; that the members of the society were making a preliminary inquiry into these charges or rumors for the purpose of ascertaining whether or not there was sufficient evidence against Elms to warrant the preferment of formal charges against him with the view of putting him upon trial; that on the evening previous to the day defendant spoke the words complained of to Henry, there was a meeting of the society at which Henry was present and at which the charges against Elms were discussed; that defendant was not present at this meeting and called on Henry the next day to learn of him what had transpired at the meeting in regard to the Elms matter; that in the course of their conversation, defendant said to Henry that Mrs. Blanch Ward, a daughter of Elms and a member of the Christian church, had stated in substance that Elms and plaintiff were living at the Elms residence in a state of sin; that defendant believed this statement to be true and repeated it in perfect good faith to Henry, but to no one else nor in the hearing of any one else; that the charge was not news to Henry for the reason he had been informed of it beforehand from other sources.

In Finley v. Steele, 159 Mo. l. c. 305, the Supreme Court adopted the following quotations as correctly defining qualifiedly privileged communications:

"In Byam v. Collins, 111 N. Y. 143, it is said: 'A libelous communication is regarded as privileged, if made bona fide, upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, if made to a person having a corresponding interest or duty, although it contains criminating matter which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect obligation.'

"In speaking of the proper meaning of privileged

communications in Klinck v. Colby, 46 N. Y. 427, it is said: 'The proper meaning of a privileged communication, is said to be this: that the occasion on which it was made, rebuts the inference arising, prima facie, from a statement prejudicial to the character of the plaintiff; and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite or ill-will, independent of the circumstances in which the communication was made.' But when the paper published is a privileged communication, an additional burden of proof is put upon the plaintiff and he must show the existence of express malice.

"It is announced in Marks v. Baker, 28 Minn. 162, that 'the rule is that a communication made in good faith, upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, public or private, either legal, moral or social, if made to a person having a corresponding interest or duty, is privileged; that in such case the inference of malice . . . is cast upon the person claiming to have been defamed.'

"In Briggs v. Garrett, 111 Pa. St. 404, it was held that a communication to be privileged must be made on a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith the law does not imply malice from the communication itself as in the ordinary case of libel." And the court held, on the authority of Henry v. Moberly, 6 Ind. App. 490, and Stewart v. Hall, 83 Ky. 375, that where the communication was shown to be a qualifiedly privileged one, "actual malice must be proved before there can be a recovery, and in the absence of such proof a nonsuit should be granted."

In Buisson v. Huard, 56 L. R. A. 300, 106 La. 768, the Supreme Court of Louisiana said:

"Among the occasions on which the statements of parties touching another person are protected as a priv-

ilege qualifiedly are where the circumstances of the case are such as cast a duty upon the former of making them in the bona fide performance of such duty. These communications may be made sometimes to an entire stranger, sometimes to parties between whom and themselves there are intimate relations of friendship, sometimes they may be made under a sense of duty to his own family or to himself. The same words which, uttered to one person, may be held privileged, might not be so held when uttered to another. The duty referred to need not be a legal duty. Any moral or social duty of imperfect obligation will suffice. It is sufficient if he honestly believe that he has a duty to perform in the premises, though it may turn out that the circumstances were not such as he reasonably concluded them to be. He must, however, have believed in the truth of his statements at the time he made them. If a man knowingly makes a false charge against his neighbor, he can not claim privilege. It never can be his duty to circulate lies. Even when a man, in making statements, is acting under a strong sense of duty, and believing in their truth, he should not be lead away, even by honest indignation, into exaggerated or unwarrantable expressions, for the privilege extends to nothing which is not justified by the occasion."

In Hemmens v. Nelson, 138 N. Y. 517, 20 L. R. A. 440, it is said: "Statements by the principal of a deaf mute institute, who was really its executive head and manager charged with the duty carefully to observe the moral conduct of teachers as well as scholars, made to the executive committee and president of the board of trustees, which have a corresponding duty in respect to the welfare of the institution, to the effect that a superintendent of the sewing department, who also instructed a class in sewing, had sent to his wife an obscene publication, are confidential and privileged, if believed by him to be true, and are not actionable unless express malice or malice in fact is shown on his part." The

court further said: "This kind of malice, which overcomes and destroys the privilege, is of course quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive. It has been defined to be an 'indirect and wicked motive which induces the defendant to defame the plaintiff.' Odgers, Libel & Slander, 267."

In Caldwell v. Story, 45 L. R. A. 735, the Supreme Court of Kentucky said: "A communication made in good faith upon any subject in which the person has an interest, or with reference to which he has a duty, public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty is privileged."

In Redgate v. Roush, 48 L. R. A. 236, the Supreme Court of Kansas said: "Where the officers of a church upon inquiry, find that their pastor is unworthy and unfit for his office, and thereupon, in the performance of what they honestly believe to be their duty toward other members and churches of the same denomination, publish, in good faith, in the church papers, the result of their inquiry, and there is a reasonable occasion for such publication, it will be deemed to be privileged and protected under the law."

In Cherry v. Des Moines Leader, 54 L. R. A. 855, the Supreme Court of Iowa held: "A verdict must be directed for defendant in the absence of anything to show ill-will or malice, in an action for the publication in a newspaper of an article ridiculing in exaggerated and uncomplimentary terms a public entertainment which is not only childish, but ridiculous in the extreme."

The defendant according to the evidence offered by plaintiff owed the society of which he was a member, the moral duty to aid in purging it of any unworthy or immoral member and to communicate to it any information he honestly believed to be true, showing immoral conduct of a member whose character was under

investigation by the society. It is plain, therefore, if he had made the communication at the meeting of the society on the evening preceding the day he made it to Henry, it would have been privileged. Is it any the less so because communicated in a confidential manner in a conversation with a member of the society in respect to what had taken place at the meeting, when, as the evidence showed, the communication was but a restatement of a report which the member to whom the communication was made had previously heard from other sources? We think not. In the circumstances set out in the answers, the conversation between defendant and Henry was about a matter in which both were interested, and if the defendant believed the reported statement of Mrs. Blanch Ward, in respect to her father and the plaintiff, to be true, then to communicate the fact to the society as a body or to one member or all the members of the society would be but the discharge of a moral obligation, and we think it wholly immaterial whether the communication was made to the society as a body or to one of its members, if the defendant believed the communication to be true and made it in good faith, it was privileged. The evidence offered by plaintiffs tends to show that the defendant did believe the communication to be true and that he acted in perfect good faith. There was no allegation in the answer that the communication was a qualifiedly privileged one, hence the defendant could not interpose that as a defense. But if plaintiff by her own evidence conclusively showed the communication was a qualifiedly privileged one and offered no proof whatever of express malice then the court should have nonsuited her, notwithstanding the failure of defendant to plead his privilege. Plaintiff was not bound by all the statements of defendant made in his abandoned answers read in evidence by plaintiff; admissions made therein against the interest of defendant, the law would presume to be true. Feary v. Railway, 162 Mo. l. c. 105; Erwin v.

Railway, 94 Mo. App. 289. But what is asserted in the answers in defendant's favor the law does not presume to be true. The general rule is that where a party introduces in evidence a writing as an admission of the adverse party, the whole becomes evidence in the case. But it does not follow that all parts are equally worthy of credit, and it is for the jury to consider under all the circumstances how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor as those made against him. 1 Greenleaf on Evidence (16 Ed.), sec. 201; Bristol v. Warner, 19 Conn. 7. Whether or not the circumstances under which the actionable words were communicated made them privileged, and, if so, whether or not the defendant acted in good faith, were questions of fact for the jury and the court properly denied the demurrer to plaintiff's evidence.

The admission of the evidence of plaintiff in respect to the conduct of the Buss family towards her before and after the publication of the slander. we think was erroneous. In the second edition of Odgers on Libel and Slander, page 231, the author says: "When it is clear that the action lies without proof of any special damages any loss or injury which plaintiff has sustained in consequence of defendant's words, even after action brought, may be proved to support the legal presumption and to show from what has actually occurred how injurious and mischievous those words were." This character of evidence seems, however, to be admissible only for the purpose of showing a loss of professional earnings or trade following the publication of the libel or slander. Newell on Slander and Libel (2 Ed.), p. 929, says: "The special damage must be the direct result of the defamatory words." In Olstead v. Brown, 12 Barb. 657, the court said: "It is a rule equally consistent with good sense, good logic and good law that a person who would recover damages for an injury occasioned by the conduct of another must show,

as an essential part of his case, the relation of the cause and effect." This paragraph of the opinion is approvingly quoted in 3 Sutherland on Damages, vol. 4, sec. 1221. It is a mere matter of conjecture that the changed demeanor of the Buss family toward the plaintiff was attributable to the slander. It might have been from some other cause having no relation whatever to the slander and such testimony should not have been admitted without some direct evidence that the change of conduct was influenced by the publication of the slander.

Judgment reversed and cause remanded. *Reyburn* and *Goode, JJ.,* concur.

GOODE, J. (concurring).—As this case has received great attention I will state separately my reasons for concurring in the result.

The abandoned answers were the only evidence introduced by plaintiff to show defendant ever made a statement derogatory to her character. Those answers contain an admission that the defendant had stated to one Edward Henry, who had made similar statements to the defendant, that Mrs. Ward had said her father J. C. Elms, was "living in sin at the house of said Elms," and other statements tending to show plaintiff was a participant in the sinful life of said Elms. One of the answers contains the following allegation: "And this defendant further states that at the time he mentioned said statement (viz., Mrs. Ward's) to said Henry, he, said Henry, made a statement to defendant that he had heard said charge and said statement of said lady made and that he believed it to be true when he heard it before." All the defendant did to put any slander concerning the plaintiff into circulation was to repeat to Henry that he (defendant) had heard of a statement made by Mrs. Ward which Henry told defendant of hearing previously. That defendant repeated the statement to any other person or that what

defendant said went beyond Henry, there was no evidence to prove.

Whether an alleged slanderous communication is privileged is matter of law for a court to determine when the circumstances and the occasion of the communication are undisputed. Newell, Slander & Libel, par. 9, p. 391; Townshend, Slander & Libel (4 Ed), sec. 288; Callahan v. Ingram, 122 Mo. 355; Wagner v. Scott, 164 Mo. l. c. 302. The rule is perhaps modified by our statute making juries in such cases judges of both the law and the facts. If the circumstances under which the words were spoken are in dispute they must be found by the jury, and it is then proper to give a hypothetical instruction that if the jury find the words were spoken on a given occasion and under certain circumstances (namely, such as render the words privileged) the verdict must be for the defendant. But words which would enjoy a qualified privilege when uttered in good faith and without actual malice, are actionable if the motive was slanderous or if they were known to be untrue. Newell, par. 9, p. 391; Wagner v. Scott, 164 Mo. 302. And malice may be implied from the fact that the statement was false. Callahan v. Ingram, Wagner v. Scott, supra. The alleged slander of which the defendant was accused was actionable *per se*. Stieber v. Wensel, 19 Mo. 513; Hudson v. Garner, 22 Mo. l. c. 423. There is conflict in the cases as to whether the defense of privilege can be availed of under a general denial or must be specially pleaded. The following authorities hold that a special plea in bar is not necessary to raise the defense of a privileged occasion in an action for slander, but that evidence in support of that defense may be given under the general issue. Newell, p. 449 and citations in note; Atwater v. News Co., 67 Conn. 504; Fero v. Rusco, 14 Comstock (N. Y.) 162; Johnson v. Brown, 13 W. Va. 71. These authorities hold that it is not available unless specially pleaded. Gilman v. McClatchy, 111 Calif.

606; Hess v. Sparks, 44 Kas. 470; Goodman v. Daniels, 89 Mass. 61. But even if it is necessary to plead the privilege in order to let in evidence to establish that defense, it would seem that if a plaintiff proves facts showing the communication was privileged, the defendant ought to be permitted to avail himself of it. Moore v. Bank, 51 Hun 472. The answers introduced by plaintiff to substantiate her case showed the alleged slanderous words were spoken under circumstances which justify the ruling that they were privileged unless the defendant's motive was malicious. It is true the plaintiff was not a member of the religious society to which the defendant belonged; but Elms, of whom the words were spoken and Henry, to whom they were spoken, were. The facts tend to show White was, consulting with Henry in good faith as a member of that society about a rumor in regard to Elms, another member, which rumor involved the plaintiff's name. That she was not a member of the society is immaterial if White acted in good faith. Etchison v. Pergason, 88 Ga. 620. Nor is it material whether the society was a church or not. It was a voluntary association of persons pledged to maintain good morals among the members. 18 Am. & Eng. Ency. Law (2 Ed.), 1035; Barrows v. Bell, 7 Gray 301, 66 Am. Dec. 479. If the alleged slander was spoken by White to Henry under the circumstances stated in the answers, it was innocently done and may well be held to come within the class of statements enjoying a qualified privilege. Plaintiff might have contradicted the allegations of the answers as to the circumstances attending the utterance of the alleged slander by other evidence; but they were not contradicted. The crucial question is how far were the statements in the answers which were put in evidence by plaintiff, binding on her as to the circumstances surrounding the utterance of the slander and White's motive? If they are conclusive as to those points, the plaintiff's cause is defeated by them. But I think they were only evi-

dence for the jury to weigh. Plaintiff swore the accusation against her character was false and if the jury so found, malice would be inferable from that fact alone, subject to rebuttal by showing the occasion justified the defendant in speaking. Newell, p. 391, par. 9. The allegations in the answers of a laudable motive on the part of White were to be considered, along with the falsity of the charge, on the issue of malice or good faith and as to whether the words were spoken under circumstances that rendered them privileged. Greenleaf says of such evidence:

"It does not follow that all the parts of the statement are to be regarded as equally worthy of credit; but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor, as those making against him."

As to the defense that White only repeated a charge made by Mrs. Ward, giving her name at the time as his authority, White's motive is important. One may repeat a slander as the utterance of another and nevertheless be liable if he does so knowing the statement is untrue and from a desire to injure the person slandered. This was decided in the case relied on by defendant: Church v. Bridgman, 6 Mo. l. c. 193. But if a person repeats a slanderous remark with no evil intention and gives his informant's name, he may plead the fact in mitigation of damages, not in justification. Newell, p. 894.

Improper testimony was received to show the damages plaintiff sustained. The real source of the slander was Mrs. Ward; and while the defendant was liable for repeating it in a way to injure the plaintiff, it is difficult to see how his doing so could work substantial damage, as Henry was apprised of all the facts and had told the defendant more in derogation of plaintiff's character than defendant told him. I agree that

the testimony in regard to the demeanor of the Buss family to the plaintiff was incompetent and very prejudical. No showing was made that any member of that family ever heard of White's statement to Henry or that any one but Henry ever heard of it. To allow the jury to conjecture that what White said to Henry caused the Buss family to alter their behavior to the plaintiff, in view of the fact that the rumors against her were so general that there had been an investigation of their truth by a society of the community, was palpably erroneous and amounts to holding the defendant responsible for conduct of other people which he may have had nothing to do with. I can think of no rule by which that evidence was admissible.

The judgment against the defendant ought to be reversed and the cause remanded.