MRS. L. D. RODDY, Appellee, v. GAZETTE COMPANY, Appellant.

**LIBEL AND SLANDER:** Evidence—Articles Reprimanding Defendant. On the trial of a libel charge, plaintiff may not introduce in evidence other published articles by other newspapers reprimanding defendant for the original publication.

**WITNESSES:** Cross-Examination—Opening Door for Receipt of Testimony Otherwise Inadmissible—Libel and Slander. Testimony on cross-examination of the plaintiff in a libel charge that a newspaper other than defendant had published the named libel and had promised a retraction thereof, does not open the door to an admission of an article by such other newspaper reprimanding defendant for publishing the original libel.

**EVIDENCE:** Opinion Evidence—Opinions as to Opinions. A witness may not give his opinion as to what another person believed.

So held where plaintiff in a libel charge was erroneously permitted to show that the public in their conduct toward her led *her* to believe that *they* believed the article published was true—that they (the public) indicated to her (plaintiff) that they believed the article to be true.

**EVIDENCE: Opinion Evidence—Bodily or Mental Condition of Person.** A nonexpert witness may not state that another looked to him ''as if she was on the verge of a nervous breakdown.''

**EVIDENCE: Opinion Evidence—Opinions as to Opinions.**

**DAMAGES: Pleading—Pecuniary Loss—Expenses.** Damages not covered by the pleadings are not recoverable. So held where, in a libel charge, plaintiff was erroneously allowed to recover for medical expense and loss in occupation, without any claim therefor in the pleading.

**EVIDENCE: Hearsay—Libel and Slander.** Evidence of what a witness overheard other people say with reference to an alleged libel is inadmissible hearsay.

**DAMAGES: Pleading—Pecuniary Loss—Expenses.**

**TRIAL: Instructions—Form, Requisites and Sufficiency—Confused and Misleading Instructions—Libel and Slander.** Instructions as to the nature of an alleged libel reviewed, and held confusing.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SATURDAY, JANUARY 20, 1917.

ACTION at law to recover damages for an alleged libel published of and concerning the plaintiff. Defendant denied that it was actuated by malice in making the publication, pleaded that it published a retraction as soon as it learned of error in the original publication; that the article was published in good faith, upon information which it believed to be true; that the information contained in the article was gathered from the Chicago Tribune and published as an item of news; that plaintiff had two names, one stage and the other her real one, and that because of this a mistake was made through inadvertence. On the issues joined, the case was

tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $2,000, and defendant appeals.—*Reversed and remanded.*

*Rickel & Dennis, G. K. Thompson* and *Wm. Smyth,* for appellant.

*R. S. Milner* and *C. H. Lamback,* for appellee.

DEEMER, J.—I. The defendant is a corporation engaged in publishing a daily newspaper in the city of Cedar Rapids. In an issue of its paper on or about June 26, 1910, it published the following:

"WAS THIS WOMAN RESIDENT OF C. R. ?

'SAPHRONIE LEBEAU' ARRESTED ON WHITE SLAVERY CHARGE.

"Story circulated that woman arrested in Chicago is Local Actress with Same Name, and who has appeared at Local Theatres.

"The Chicago Tribune of last Sunday contained the following item:

"'Two persons, a woman and a man, yesterday faced charges of bringing girls to Chicago for immoral purposes.

"Mrs. Saphronie Lebeau, 2002 Wabash Avenue, charged with having brought Miss Adrienne Gringes, 18 years old, from Canada, was arrested by Federal authorities and arraigned before United States Commissioner Mark A. Foote. Her case was set for hearing June 24th and she was released on $1,000 cash bail. Battisti Pizzi was sentenced to one year in the house of Walker for placing Ethel Archbold, a New York girl, in a resort at 407 South Clark Street. Both cases resulted from the fight headed by Clifford G. Roe against the traffic in girls in Chicago.

"IS IT A CEDAR RAPIDS WOMAN?

"There is a persistent rumor about the city that the woman mentioned above is Saphronie Lebeau, a stock com-

pany actress, whose home is in Cedar Rapids when she is not on the road. 'Lebeau,' it is of course needless to state, is a stage name. The real name of the Cedar Rapids Lebeau is Mrs. Roddy, she having been divorced from her husband several years ago. Mrs. Lebeau was in Cedar Rapids on Monday or Tuesday of this week, but previous to that time had been absent from the city for some time, so it is stated. She has appeared at different theatres in this city, having played a week with the Frank Long Stock Company at the People's, and another week with a different company at Greene's. She has also appeared at the moving picture shows and is said to be a character artist of some ability. If there are two persons of the same name, the charge of course does the Cedar Rapids woman a gross injustice.''

On the next day after the publication of this article, the defendant published the following retraction:

"LE BEAU IS NOT MRS. RODDY.

"SIMILARITY OF NAMES LED TO UNFORTUNATE ERROR.

"Cedar Rapids woman has not been in Chicago—Her stage name is LaBeau not Lebeau.

''Mrs. Roddy of this city who was referred to in an article in the Gazette yesterday in connection with an arrest in Chicago does not use the name Lebeau as her stage name. Mrs. Roddy's stage name is La Beau. Mrs. Roddy has also been in Cedar Rapids continuously and therefore could not have been placed under arrest in Chicago for any real or alleged crime. Mrs. Roddy has been taking care of her mother who was injured in an accident some time ago; she has numerous friends in this city, where she has appeared as an actress of ability, and which has always been her home. The similarity of names led to an unfortunate inference, though the Gazette stated if there were two persons of the same name the rumor is unjust to the Cedar Rapids woman. It is needless to say that the Gazette had not the slightest

intention of doing Mrs. Roddy an injustice. The correction therefore is gladly made."

Notwithstanding, this action was commenced, with the result heretofore indicated. The trial was a long one, and 41 errors are assigned. We shall not notice all of these assignments, as to do so would accomplish no useful purpose. The main points relied upon relate to rulings on the admission and rejection of testimony, to the instructions given and refused, the sufficiency of the testimony to support the verdict, and the excessive nature of the verdict.

Plaintiff's counsel offered as a part of her re-examination the following article, published in the Republican, a competing newspaper in the city of Cedar Rapids, as we understand it, the next day after the retraction was made in the Gazette:

1. LIBEL AND SLANDER: evidence: articles reprimanding defendant.

"MRS. LEBEAU SLANDERED.

"A CEDAR RAPIDS PAPER MAKES A FRIGHTFUL BLUNDER.

"Connects Saphronia Lebeau of this City with a notorious woman arrested in Chicago.

"A serious injustice has been done by a local paper in connecting Mrs. Saphronia Lebeau of this city with an arrest for 'White Slavery' in Chicago. This paper has been asked to make statement for Mrs. Lebeau, and are consenting gladly and gladly does so, for it is always a serious matter to rob a woman of her good name.

"The Gazette stated there was a 'persistent rumor' to the effect that a Chicago woman with a slightly different name was the same as the Cedar Rapids woman. It was also stated that she had been in the city on Monday and Tuesday, but that 'previous to that time had been absent from the city for some time,' thus making it possible to connect the two women.

"As a matter of fact Mrs. Lebeau has not been absent from the city 'previous to that;' she has been continuously in the city attending an invalid mother. That has been her

work continuously for nearly two years. That is entirely
different from being in Chicago engaged in the 'white slave
traffic.' There are other aspersions on her character, such
as that she was divorced from her husband some time ago.
Her husband has been dead more than six years. The hus-
band, Mr. Roddy, when alive, was an actor of prominence
and had a reputation in Shaksperian roles, even Mrs. Roddy,
whose stage name is Saphronia Lebeau, is naturally very
indignant about the aspersions cast upon her good name.
Her neighbors in this city and those who know her are also
greatly put out about it. There was no possible excuse for
such a publication, unless it was the slight similarity in
names. Mrs. Lebeau has been a devoted daughter at the bed-
side of her mother, and has devoted all of her time to that
work. The injustice that has been done her is of course
very great.''

Manifestly, this testimony was irrelevant to any issue
in the case, and extremely prejudicial. Appellee's counsel,
however, recognizing this fact, claim that the matter was
brought out on the cross-examination of the
witness, and that for this reason they were
justified in offering it in testimony. We have
examined the record on this matter with care,
and the most we can find is that plaintiff, on
cross-examination, stated that the Republican had published
the same libel as the Gazette had, and that she went to the
Republican and was promised a retraction by that paper. It
was perfectly proper for defendant, on cross-examination, to
show that, about the same date, the Republican published the
same libel, for the purpose of showing that the Gazette was
not wholly responsible for the circulation of the libel, and
also to inquire as to the retraction published by it, to show
that this, too, got into the hands of some people who might
have been led to believe that there was no truth in the charge
made by either paper. This is the substance of the only
reference to the matter made by defendant's counsel, and

2. WITNESSES:
cross-examina-
tion: opening
door for receipt
of testimony
otherwise inad-
missible: libel
and slander.

it is manifest that it did not open the door to the introduction of the article published by the Republican, reprimanding the defendant for having published the article which is the basis of this libel. Defendant's counsel are experienced practitioners, and it can hardly be assumed that they laid the ground for the introduction of such an article as the one complained of. Of course, the most experienced make mistakes, but we find nothing justifying the admission of the article.

II. Plaintiff, over defendant's objections, was permitted to show that the public, by their conduct toward her, led her to believe that they believed the article published about her to be true. She was also permitted to say that they indicated to her that they believed it. Now, while it is true, when the question becomes material, that one may testify as to his own belief, he cannot testify as to what he believes other persons believe. That is purely an opinion, which should not be admitted in evidence. If the belief of other people becomes material, they are the ones to testify to that belief, and not some third person. *Kersting v. White* (Mo.), 80 S. W. 730; *Warner v. Clark* (La.), 21 L. R. A. (O. S.) 502; *Craswell v. Pure Bred Cattle Commission Co.,* 148 Iowa 9. The conduct toward plaintiff of parties who, it is shown, read the libel and were influenced thereby may be shown, but a belief of the libelee regarding the belief of others, without a showing that this had some effect on their conduct, and that this conduct on their part grew out of the publication of the libel, is clearly inadmissible.

*3. EVIDENCE: opinion evidence: opinions as to opinions.*

III. A son of the plaintiff's was asked to state the effect of the same upon his mother. He answered that she looked to him as if she was on the verge of a nervous breakdown. The son was a nonexpert, and the question called for expert testimony. We doubt if any nonexpert should be permitted to state that another looked as if he or she was on the

*4. EVIDENCE: opinion evidence: bodily or mental condition of person.*

verge of a nervous breakdown. He might be permitted to state that another was nervous, or irritable, or hysterical, but to say that she was on the verge of a nervous breakdown calls for something different—something beyond the knowledge of a lay mind.

IV. This appears in the record: A witness by the name of Mrs. Fields was called for plaintiff, and the following is taken from the record:

5. EVIDENCE: opinion evidence: opinions as to opinions.

"Q. You may state whether or not the discussions that you heard with friends and with outsiders indicated a belief in the minds of the outsiders so discussing the subject, in the truth of the statements made by the Gazette? (Objected to by defendant as incompetent, and calling for the conclusion and opinion of the witness, and irrelevant and immaterial. Overruled. Defendant excepts.) A. There was a strong suspicion. (Defendant moves to strike out the answer as not responsive. The Court: You can't do that. The plaintiff states that they adopted it as responsive. The Court: Motion overruled. Defendant excepts.)"

We are of opinion that the objection to the question should have been sustained. At any rate the witness's answer should have been stricken out.

V. Without any pleading of special damages, or any claim in the pleading for medical expense, plaintiff was permitted to show the amount of medical bills incurred by her.

6. DAMAGES: pleading: pecuniary loss: expenses.

Under familiar rules, this was improper. The same remark may be made regarding the claim that plaintiff suffered in her occupation and trade as an actress. While there was some testimony that she was unable to get employment, or the employment which she sought, she neither averred nor proved the damage which resulted therefrom. We find no testimony in the record as to her salary, or as to the value of time which she lost on account of the libel, and the court was in error in instructing that she was entitled to damages on account thereof.

VI.   A witness by the name of Mrs. Doty was permitted, over defendant's objection, to testify to certain remarks she overheard, made by other women regarding the plaintiff, to the effect that they had read the newspaper account, and that it was a terrible thing for plaintiff to do.   Manifestly, this was no part of the *res gestae,* and was clearly hearsay.   Another witness was permitted to testify as to hearsay statements made by parties in Des Moines, Iowa, and to detail his discussion of the matter with them.   This was clearly inadmissible.   The court indicated to counsel that he was not satisfied about the admissibility of the testimony, and that they would have to take their chances.   He overruled the objections, however, and permitted the witness to answer.   Other rulings on the admission of testimony are challenged, but they were either correct or are not likely to arise on a retrial, and we do not consider them.

7. EVIDENCE: hearsay: libel and slander.

VII.   Defendant asked an instruction to the effect that plaintiff had suffered no damages for injury done to her business, or profession, and that this matter should not be considered by the jury.   This was refused.   For reasons already stated, we think it should have been given.

8. DAMAGES: pleading: pecuniary loss: expenses.

VIII.   There is some confusion in the instructions regarding the nature of the alleged libel.   In one, the court said that the Chicago Tribune article did not accuse plaintiff with the commission of a crime, and that the Gazette published this with nothing more than a comment upon whether or not plaintiff was the woman who was arrested; but in the same instruction the court left it to the jury to say whether or not the defendant intended to charge that plaintiff was, in fact, guilty of the offense, saying that, if the jury found this was the defendant's intent, then it would be guilty of libel, and plaintiff would be entitled to damages.   Nothing is said about whether the statement that

9. TRIAL: instructions: form, requisites and sufficiency: confused and misleading instruction: libel and slander.

plaintiff had been arrested and charged with the crime would or would not be libelous, save in a negative way. Other instructions complained of need not be noted, for they seem to be correct statements of the law, or are not challenged. Nor shall we discuss the size of the verdict, as there must be a retrial of the case.

For the errors pointed out, the judgment must be, and it is, reversed, and the cause remanded for another trial.— *Reversed and remanded.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.